UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DENISE K. SHULL and THE RETHINK GROUP,
INC.,

               Plaintiffs,

         v.

ANDREW ROSS SORKIN, BRIAN
KOPPELMAN, DAVID LEVIEN, DAVID
NEVINS, TBTF PRODUCTIONS INC.,
SHOWTIME NETWORKS, INC., and CBS
CORPORATION,

               Defendants,

Civil Action No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

     Plaintiffs Denise K. Shull ("Ms. Shull") and The ReThink Group (collectively, the "Plaintiffs") by and through their undersigned counsel, as and for their complaint against Defendants Andrew Ross Sorkin, Brian Koppelman, David Levien, David Nevins, TBTF Productions, Inc., Showtime Networks, Inc., and CBS Corporation (collectively, "Defendants"), state and allege as follows upon information and belief:

## NATURE OF THE ACTION

    1.    This is a case of willful copyright infringement under 17 U.S.C. §§ 106, *et seq.*, violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), violation of §§ 50 and 51 of the New York Civil Rights Law, unfair competition and deceptive business practices under §349 of the N.Y. General Business Law, unjust enrichment, and implied in fact contract for which Plaintiffs seek damages, injunctive, and other relief.

    2.    Defendants promote themselves as the creators, writers, and producers of the television series "*Billions*," which includes the pivotal character of Dr. Wendy Rhoades, a

female, in-house performance coach for a hedge fund. Dr. Rhoades is known for her unique technique, as expressed in multiple episodes of the series, which combines the psychology of trading and risk, based largely on recognizing and using emotions as part of the risk calculus. Dr. Rhoades' technique is not a fiction created out of the minds of the showrunners and writers of *Billions*. Rather, it is an unauthorized rip-off of Plaintiff Ms. Shull's original work, the book *Market Mind Games: A Radical Psychology of Investing, Trading, and Risk*, ("*Market Mind Games*").

3.      *Market Mind Games* is an original work authored by Ms. Shull and published in 2012. In *Market Mind Games*, Ms. Shull, in part, created a fictionalized retelling of her experiences and observations in the form of an in-house female performance coach for a hedge fund.

4.      Defendants have improperly appropriated, copied, prepared, distributed, displayed, and offered for sale the copyrighted work of Plaintiffs and the style and persona of Ms. Shull without permission, compensation, or remuneration, and with full knowledge that their infringing activities would damage Plaintiffs.

## THE PARTIES

5.      Ms. Shull is, and at all times mentioned herein was, an individual residing in, and who is engaged in and doing business in, New York County, New York.

6.      Plaintiff The ReThink Group, Inc. ("The ReThink Group") which Ms. Shull founded, is a risk and performance advisory consulting firm. The ReThink Group is, and at all times mentioned herein was, a New York Corporation with its principal place of business at 54 W. 40th Street, New York, NY 10018. The ReThink Group is the owner of all right, title and interest in and to the copyright of *Market Mind Games*.

7.      Upon information and belief, Defendant Andrew Ross Sorkin is, and at all relevant times mentioned herein was, an individual residing in New York County who maintains a regular office in New York County. Defendant Andrew Ross Sorkin is a journalist and writer, well known for co-hosting a popular television show, "*Squawk Box,*" on the television network CNBC, and which regularly features authors and columnists pertinent to the finance industry. Mr. Sorkin is also known for the book *Too Big to Fail: The Inside Story of How Wall Street and Washington Fought to Save the Financial System—and Themselves*, published in 2009. In 2011, Defendant Sorkin co-wrote and co-produced the movie, *Too Big to Fail*, which is based on the book of the same name.

8.      Upon information and belief, Defendant Brian Koppelman is, and at all relevant times mentioned herein was, an individual residing in New York County who maintains a regular office in New York County.

9.      Upon information and belief, Defendant David Levien is, and at all relevant times mentioned herein was, an individual residing in New York County who maintains a regular office in New York County.

10.     Upon information and belief, Defendant David Nevins, CEO of Showtime, is, and at all relevant times mentioned herein was, an individual residing in New York County who maintains a regular office in New York County.

11.     Upon information and belief, Defendant TBTF Productions, Inc. is, and at all relevant times mentioned herein was, a New York corporation with a principal place of business in New York County.

12.     Upon information and belief, Defendant Showtime Networks, Inc. ("Showtime") is a Delaware corporation having a principal place of business at 51 West 52nd Street, New York, NY. Upon information and belief, Showtime is a wholly-owned subsidiary of CBS Corporation.

13.     Upon information and belief, Defendant CBS Corporation is a corporation organized and existing under the laws of the State of Delaware having a principal place of business at 51 West 52nd Street, New York, NY. Upon information and belief, at all relevant times CBS Corporation had the right and ability to supervise the creation, production, publication, distribution, and/or other activities of the individual defendants respecting the infringing works that are the subject of this action.

14.     Upon information and belief, at all relevant times with respect to the offenses alleged in this Complaint, Defendants were acting in concert or participation with each other, or were joint participants and collaborators in the acts complained of and were the agents or employees of each other in doing or ratifying the acts complained of, each and all acting within the course and scope of the agency and/or employment by the others and all acting in concert with the other and all together, with the knowledge and consent of each other, such that each and every Defendant is liable for the acts of the other Defendants.

15.     Plaintiffs are informed and believe, and on that basis allege, that at all relevant times mentioned herein, Defendants were and are the agents, servants, alter egos and/or employees of each other and the things alleged to have been done by any one Defendant were done in the capacity of and as agent, servant, alter ego and/or employee of and for the other Defendants, with their full knowledge, approval and ratification.

## JURISDICTION AND VENUE

16.     The Court has federal question jurisdiction over this action under 17 U.S.C. §

101, *et seq.*, 15 U.S.C. §1125(a), *et seq.*, and 28 U.S.C. §§ 1331, 1338(a) and 1367(a) because

the Court has original jurisdiction over Plaintiffs' copyright infringement and Lanham Act

claim(s) and supplemental jurisdiction over Plaintiffs' claims arising under New York law

17.     The Court has personal jurisdiction over Defendants because they reside in this

district and a substantial part of the events and omissions giving rise to Plaintiffs' claims

occurred in this district.

18.     Venue is proper in this district under 28 U.S.C. §1391(b) because Defendants

reside in this district and/or a substantial part of the events and omissions giving rise to

Plaintiffs' claims occurred in this district. Venue is also proper in this district under 28 U.S.C. §§

1391(c) and 1400(a) because Defendants reside in this district or they or their agents are

otherwise subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

19.     Plaintiff Denise K. Shull is an author and leading professional performance coach.

Ms. Shull draws on her expertise in neuropsychoanalysis, neuroeconomics, and modern

psychoanalysis to coach her hedge fund portfolio manager clients to peak performance.

20.     Plaintiff Ms. Shull is an expert in neuroeconomics, modern pyschoanalysis and

neuropsychoanalysis. She is the only expert combining these three fields of study and applying

them to risk decision-making and performance coaching for hedge funds. Her book, *Market

Mind Games*, is the only book known to combine all three fields of study and apply them in the

world of finance.

21.     In January 2012, Denise Shull's book, *Market Mind Games*, was published by McGraw-Hill Education. *Market Mind Games* uses the setting of a fictional hedge fund and Ms. Shull's own persona to describe her techniques and insights into the psychology of hedge fund traders by retelling fictionalized accounts from Ms. Shull's own experience. In *Market Mind Games*, Ms. Shull describes, *inter alia*, her experience advising financial professionals, hedge fund managers, and Wall Street employees on the impact of neuroeconomics, modern psychoanalysis, and neuropsychoanalysis on the performance of her clients.

22.     In *Market Mind Games*, Ms. Shull uses fictional characters attending fictional versions of her typical lectures, workshops, consulting programs and one-on-one performance coaching meetings as they set up and run a fictional hedge fund. Ms. Shull explains at the beginning of the book that she takes this approach because it is easier to process new ideas and information when it is presented in social or human terms.

23.     Specifically, Ms. Shull introduces the reader to four characters: Michael Kelley, her fictional hedge fund manager; Richard Kelley, Michael's judgmental father; Renee Smith, the daughter of a former floor trader; and Christopher Smith, Renee's father. As the story progresses, Michael and Renee attend a number of Ms. Shull's workshops. Michael moves from academia to running a hedge fund that hires Ms. Shull as their in-house performance coach.

24.     *Market Mind Games* is an original work of authorship that is fixed in a tangible medium of expression. The book was written by Ms. Shull as a work for hire on behalf of The ReThink Group. Thus, The ReThink Group holds all rights to any and all derivative works from the book. The ReThink Group registered the book with the United States Copyright Office on January 31, 2012. A true and correct copy of the Certificate of Registration, No. TX0007485421,

is attached as Exhibit A, and by this reference, is incorporated herein as though set forth at length.

25.     *Market Mind Games* has received critical acclaim from a variety of scholars and practitioners and consistently receives rave reviews from readers thanks to its unique perspective and approach to understanding the psychology of trading financial markets, particularly the idea that emotions and emotional baggage are a key component to decision making.

26.     In 2012, Defendant Sorkin invited Ms. Shull to appear on "*Squawk Box.*" In connection with this appearance, Ms. Shull learned that Mr. Sorkin had read *Market Mind Games* and was aware of the popularity of Ms. Shull and her unique approach to performance coaching and trading psychology.

27.     On or about August 9, 2012, Ms. Shull did in fact appear on "*Squawk Box"* for an interview with Defendant Sorkin during which they discussed *Market Mind Games* and her unique approach to working as a performance coach for financial professionals.

28.     On or about November 11, 2013, in a special section associated with their annual conference of the same name, *Dealbook,* a New York Times publication founded and edited by Defendant Sorkin, published a photo of Ms. Shull in her office with the title "THE COACH Denise Shull" and an accompanying article describing Ms. Shull's work as a hedge fund performance coach focusing on helping clients optimize performance by dealing with their emotional baggage and exposing how their subconscious influences their market decisions.

29.     Unbeknownst to Ms. Shull at the time of the *Squawk Box* interview and the article in *Dealbook,* Defendant Sorkin was also developing a pilot for a television series based in part on *Market Mind Games* and Ms. Shull's persona as a performance coach to financial professionals.

30.     Upon information and belief, in or about February or March 2014, Defendant Sorkin, along with fellow Defendants Koppelman and Levien, sold the idea for this new television series, titled *Billions*, to Defendant Showtime.

31.     On or about August 26, 2015, Defendant Sorkin emailed Ms. Shull about the series *Billions* and requested her assistance with the development of the female lead character, Dr. Wendy Rhoades, a female hedge fund performance coach who helps financial professionals improve their performance by dealing with their own emotional baggage.

32.     The following day, August 27, 2015, Defendant Sorkin sent to Maggie Siff an email introducing Ms. Shull as "one of the leading hedge fund performance coaches in the country."  Ms. Siff was cast to play the role of Dr. Wendy Rhoades in *Billions*.

33.     The very next day, August 28, 2015, Ms. Shull received an email from Ms. Siff requesting a meeting and "looping in the other exec[utive] producers, Dave [Defendant Koppelman] and Brian [Defendant Levien], who are slaving away in the writer's room (and the editing room and on set) . . . ."

34.     Late that night, August 28, 2015, Ms. Shull also received an email from Defendant Koppelman inviting her into the writers' room, stating that he was "excited" to read her book and meet and that his assistant would be in touch.

35.     On September 2, 2015, Ms. Shull arrived at the agreed location, which she learned was the writers' room, but Ms. Siff was not there initially. For the first 30-40 minutes, Ms. Shull met with Defendants Koppelman and Levien. They told Ms. Shull that they had met with Tony Robbins, but that they were looking for additional insights about the field of hedge fund performance coaches. Ms. Shull explained to them how her approach differed from that of Mr. Robbins and provided some examples about how she used different settings (such as out of

office sessions) to trigger her client's subconscious. Ms. Siff eventually joined the meeting and actively participated in the discussion, which continued for about one more hour. Defendants Koppelman and Levien and Ms. Siff inquired about all aspects of Ms. Shull's work as a performance coach to hedge funds and other financial firms and Ms. Shull's unique approach to trading and investing psychology. Ms. Shull actively participated in the meeting, responding to these inquiries. Defendants Koppelman and Levien and Ms. Siff took notes during the meeting. Defendant Levien invited Ms. Shull to visit the set when filming began. Ms. Siff stated that she was reading *Market Mind Games*, and believed that the book would be an integral part of developing the character of Dr. Wendy Rhoades for the "*Billions"* television series. Ms. Siff stated that she looked forward to learning more from Ms. Shull. Defendant Koppelman then asked if there was an audio version of the book and stated his intention to download it.

36.     At this point in the conversation, Ms. Shull mentioned that *Market Mind Games* was written as a fictional account of a hedge fund with Ms. Shull's own persona as the in-house performance coach. As soon as he heard this, Defendant Koppelman's demeanor changed and he appeared uncomfortable.

37.     The next day, on September 3, 2015, Ms. Shull was contacted by Alphonzo Terrell, Senior Manager of Showtime's Senior Manager of Showtime's Digital Media Group. Mr. Terrell wanted to discuss involving Ms. Shull in promoting "*Billions"* and also wanted to set up a call with Ms. Shull and other members of the Billions promotional team.

38.     On September 9, 2015, Ms. Shull and her business partner did in fact have a conference call with Mr. Terrell and other senior members of Showtime's creative, marketing and promotional departments to discuss joint promotional initiatives relating to "*Billions"* and *Market Mind Games*.

39.     Based on the conduct of the Defendants, Ms. Shull understood that the initial phone conference and in-person meeting was the beginning of the relationship and terms would be negotiated subsequently in concert with marketing of the series.

40.     During the period when Ms. Shull assisted Defendants in the creation of *Billions*, Plaintiffs never authorized any of the Defendants to create a derivative work from *Market Mind Games*. Rather, at all relevant times, Plaintiffs and Defendants understood and agreed that Ms. Shull would receive credit and compensation for her contributions and the derivative status of *Billions*. Ms. Shull never granted authorization, in any form, to any of the Defendants to use her persona for commercial purposes without compensation.

41.     In or around January 2016, Defendant Showtime released the pilot episode of the television series "*Billions.*" Upon information and belief, Defendants Sorkin, Koppelman, and Levien claimed to have written the script of the pilot episode.

42.     As discussed above, *Billions* portrays the experiences of "Dr. Wendy Rhoades," who is a performance coach to financial professionals at a fictionalized hedge fund. However, key aspect of *Billions* and the character of Dr. Wendy Rhoades, in particular, are merely derivative works of Plaintiffs' book, *Market Mind Games.* The pilot episode of *Billions* not only portrays Dr. Wendy Rhoades as substantially the same as Ms. Shull portrays her own character in *Market Mind Games*, but in the pilot Dr. Rhoades makes multiple statements and observations that are nearly identical to those made by Ms. Shull in *Market Mind Games*, including focusing on the physical well-being of the trader client (*i.e.* eat, sleep, exercise) and tuning into the alpha voice.

43.     The similarities between *Billions* and *Market Mind Games* continue through subsequent episodes. For instance, in Chapter 20 of Ms. Shull's book, "The 'What Was I

Thinking Rehash,'" Ms. Shull's fictional persona walks her hedge fund manager client, "Michael," through a trade that went bad.  This fictionalized account is eerily similar to Episode 11 from Season 1 of *Billions* (titled "Magical Thinking"), in which Dr. Rhoades and Bobby "Axe" Axelrod rehash what caused him to make a bad trade.

44.     In the fictional account created by Ms. Shull in *Market Mind Games*, Ms. Shull engages in a sequence with "Michael" in which she analyzes a trait exhibited by Michael that served him well in the past, and informed his conscious image of himself, but has now created an unconscious obstacle that is costing him money:

> Haven't you told me in the past that one of the problems you would like to solve is getting stubborn? You can be assured that that trait, if you want to call it that, isn't *just* being stubborn. There is a fractal-emotional context that has been with you for a long time. Undoubtedly, it served you well in getting through challenging moments in school or fighting for the bank job or even being willing to take on this hedge fund challenge. In fact, when the pattern first starting [*sic*] coming together, I am sure it served you well. It is acting out anger, and if we do that consciously and intentionally, it can be our best ally. But when we are doing so without really knowing who or what we are trying to retaliate against, it tends neither to serve our best interests nor to make us money.

(p. 221, *Market Mind Games*)

45.     In Season 1, Episode 11 of *Billions*, Defendants portrayed Dr. Wendy Rhoades conducting substantially the same sequence with Axe in substantially the same context, *i.e.*, as an in-house performance coach to the head of a hedge fund who seeks to understand the cause of his bad trade:

> Look, you want me to fix the part of you that makes money. But it is attached to the rest, so... Like I said, this is gonna take a little while. . . .
>
> Maybe your self-image is creating... a blind spot. . . .  Well, let's assume your blind spot usually works for you. It's fairly essential if you don't feel indestructible like Superman. How are you gonna risk billions every morning? But it's not working for you now. So you need to figure out what part of your self-image is false.  And then you either need to live up to it or lose it.

46.     Other episodes of *Billions* contain substantially similarities to statements, observations, and fictionalized accounts set forth in *Market Mind Games*. As such, the Showtime series "*Billions*" is an unauthorized derivative work of the copyright protected work *Market Mind Games*.

**FIRST CAUSE OF ACTION**
**WILLFUL COPYRIGHT INFRINGEMENT – 17 U.S.C. §§ 106,** *et seq.*
**(Direct, Contributory and Vicarious)**
**AGAINST ALL DEFENDANTS**

47.     Plaintiffs repeat and incorporate by reference the allegations contained in the above paragraphs as though fully set forth herein.

48.     Plaintiff The ReThink Group owns the valid, federally registered copyright in the book *Market Mind Games*.

49.     Plaintiff The ReThink Group, as the exclusive copyright owner of *Market Mind Games*, has the exclusive rights to, and to authorize others to, prepare derivative works based upon the copyrighted work; reproduce and distribute copies of the copyrighted work and any derivative works; and publicly perform and display the copyrighted work.

50.     As described above, in or around January 2016, Defendants released the pilot episode of *Billions*, which is an unauthorized derivative work of *Market Mind Games*.

51.     In violation of the copyright held by Plaintiff The ReThink Group, Defendants have prepared, displayed, distributed and offered for sale the unauthorized derivative work *Billions* and continue to do so, all without Plaintiffs' authorization, consent, permission or license.

52.     In so doing, Defendants have violated Plaintiff The ReThink Group's exclusive right to control distribution and reproduction of the copyright protected material and to create

works deriving therefrom, as articulated in 17 U.S.C. § 106. Accordingly, Defendants have infringed Plaintiffs' rights in the copyright protected work under 17 U.S.C. § 501.

53.     Defendants' infringements and substantial contributions to the infringement of Plaintiffs' copyrighted work have been committed knowingly and without Plaintiffs' consent for commercial purposes and for Defendants' very lucrative financial gains.

54.     Furthermore, Defendants Showtime, CBS, and Nevins failed to exercise their right and ability to supervise any person(s) within their control to prevent any such person(s) from infringing the Plaintiffs' copyrighted work, and did so with the intent to further their own financial interest in the infringement of Plaintiffs' copyrighted work.

55.     Accordingly, Defendants have directly infringed Plaintiff's copyrighted work.

56.     By virtue of Defendants wrongful infringement, Plaintiffs are entitled to recover their actual damages and Plaintiffs' profits in an amount to be proved at trial, Plaintiffs' attorneys' fees and costs of suit, and all other relief allowed under the Copyright Act.

57.     Defendants' infringement has caused and continues to cause irreparable harm to Plaintiffs, for which Plaintiffs have no adequate remedy at law. Unless this Court restrains Defendants from continuing their infringing activity in violation of 17 U.S.C. §§ 106 and 501, those injuries will continue to occur. Accordingly, Plaintiffs are entitled to preliminary and permanent injunctive relief restraining Defendants from further infringement.

**SECOND CAUSE OF ACTION**
**VICARIOUS, CONTRIBUTORY and/or INDUCEMENT OF**
**COPYRIGHT INFRINGEMENT under 17 U.S.C. §§ 106, *et seq.***
**AGAINST ALL DEFENDANTS**

58.     Plaintiffs repeat and incorporate by reference the allegations contained in the above paragraphs as though fully set forth herein.

59.     Defendants, knowingly induced, participated in, aided and abetted, and resultantly profited from the illegal creation of derivative works based on Plaintiff The ReThink Group's copyright protected book, *Market Mind Games*.

60.     Defendants are liable for the infringement alleged herein because they had a direct financial interest in the infringing conduct and the right and ability to supervise the infringing conduct or because they intended to, and in fact did, encourage the infringing conduct.

61.     By reason of the Defendants', and each of their, acts of direct, contributory and/or vicarious infringement as alleged above, Plaintiffs have suffered and will continue to suffer substantial damages in an amount to be established at trial.

62.     Due to Defendants' acts of contributory and/or vicarious copyright infringement, Defendants, and each of them, have obtained direct and indirect profits they would otherwise not have realized but for their infringement of *Market Mind Games*. As such, Plaintiffs are entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement in an amount to be established at trial.

## THIRD CAUSE OF ACTION
### VIOLATION OF NEW YORK CIVIL RIGHTS LAW §§ 50 AND 51
### AGAINST ALL DEFENDANTS EXCEPT NEVINS

63.     Plaintiffs repeat and incorporate by reference the allegations contained in each of the foregoing paragraphs as though fully set forth herein.

64.     Through Sections 50 and 51, the New York legislature sought to protect a person's right to be free from unwarranted intrusions into his or her privacy, while at the same time protecting the quintessential American right to freedom of expression.

65.     In the show *Billions*, Defendants used Plaintiff's persona without her consent in the State of New York.

66. Defendants' various uses of Plaintiff's persona in the show *Billions* were "for advertising purposes or for purposes of trade."

67. Defendants' use of Plaintiff's persona in the form of Dr. Wendy Rhoades as alleged herein also suggests to consumers that Ms. Shull had agreed to such use of her likenesses in conjunction with Defendants' television series.

68. As discussed, *supra*, Plaintiff Ms. Shull's persona has commercial value.

69. Plaintiff Ms. Shull does not endorse or sponsor the "*Billions*" series, nor has she ever, nor did she ever, give any of the Defendants permission to make commercial use of her persona in any way in connection with the "*Billions*" series without appropriate recognition and remuneration.

70. Defendants have misappropriated Plaintiff Ms. Shull's persona without recognition and compensation, and of course, without her consent, in order to promote their television series and related marketing efforts.

71. By doing so, Defendants have converted Plaintiff Ms. Shull into an involuntary spokesperson for their brand – the hugely successful television show, "*Billions*."

72. Moreover, Defendants used Plaintiff Ms. Shull's likeness in a manner that creates the false implication and impression that she sponsors, endorses or is otherwise associated with Defendants and their brand. The right to use Plaintiff's likeness in the manner alleged herein to advertise and promote Defendants' series is an extremely valuable commercial right for which Plaintiff Ms. Shull, had she been asked and had she consented, should and would have been paid a large sum of money.

73. Moreover, the value of Plaintiff Ms. Shull's persona has been diminished and negatively impacted by Defendants' unauthorized use.

74. Defendants' conduct alleged hereinabove constitutes a willful violation of Plaintiff Ms. Shull's common law right of publicity. As a direct and proximate result of Defendants' said misconduct, Plaintiff Ms. Shull has suffered and will suffer substantial monetary damage in an amount to be proven at trial.

75. Plaintiff Ms. Shull has been, and unless enjoined by this Court, will continue to be, damaged and irreparably harmed by Defendants' continued unauthorized use of her persona to promote their series and merchandise. Such irreparable harm constitutes an injury for which Plaintiff Ms. Shull has no adequate remedy at law. Accordingly, she is entitled to preliminary and permanent injunctive relief prohibiting Defendants from using her persona in any manner, including but not limited to, in connection with promoting Defendants' television series and associated merchandising.

76. Defendants' conduct as herein alleged was undertaken by Defendants with a willful and conscious disregard of Plaintiff Ms. Shull's rights. She is informed and believes, and based thereon alleges, that Defendants did the acts as alleged herein with an intent to injure her and to subject her to cruel and unjust hardship in conscious disregard of her rights, and that said acts were done willfully, maliciously, and oppressively. Plaintiff Ms. Shull is, therefore, entitled to an additional award of punitive and/or exemplary damages in an amount sufficient to punish Defendants and to deter Defendants from committing such acts in the future. By engaging in such acts, Defendants have jointly and severally violated New York Civil Rights Law §§ 50 and 51.

77. That by reason of the foregoing, Plaintiff Ms. Shull has been damaged in an amount which exceeds the monetary jurisdictional limits of any and all lower courts which

would otherwise have jurisdiction herein, and in an amount to be determined upon the trial of this action.

78.     That by reason of the foregoing, exemplary damages pursuant to the statute should be imposed against Defendants in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### INJURY TO BUSINESS REPUTATION; DILUTION and UNFAIR COMPETITION UNDER NY LAW NY GEN BUS § 360-L
### AGAINST ALL DEFENDANTS EXCEPT NEVINS

79.     Plaintiffs repeat and incorporate by reference the allegations contained the above paragraphs as though fully set forth herein.

80.     Defendants' conduct as described above constitutes a likelihood of injury to the business reputation of Plaintiffs and dilution of the distinctive quality of Plaintiff The ReThink Group's copyrighted work, in violation of section 360-L of the New York General Business Law.

81.     As a result of the Defendants wrongful actions, Plaintiffs have suffered and will continue to suffer damages, injury and irreparable harm.

## FIFTH CAUSE OF ACTION
### DECEPTIVE TRADE PRACTICES UNDER NY STATUTORY AND COMMON LAW AGAINST ALL DEFENDANTS EXCEPT NEVINS

82.     Plaintiffs repeat and incorporate by reference the allegations contained in the above paragraphs as though fully set forth herein.

83.     Defendants' acts constitute deceptive trade practices by passing off and creating a likelihood of confusion, in violation of the New York General Business Law § 349 and New York common law.

84.     As a result of the Defendants wrongful actions, Plaintiffs have suffered and will continue to suffer damages, injury and irreparable harm.

**SIXTH CAUSE OF ACTION**
**UNJUST ENRICHMENT UNDER NY GEN BUS §350**
**AGAINST ALL DEFENDANTS**

85.     Plaintiffs repeat and incorporate by reference the allegations contained in the above paragraphs as though fully set forth herein.

86.     Plaintiffs at their own expense and without attribution, provided Defendant with content for "*Billions*."

87.     In addition, Plaintiff Ms. Shull provided certain other consulting services to Defendants as explained above.

88.     "*Billions*" is a hugely successful television series entering its fourth season with revenues in excess of an amount to be determined at trial.

89.     Under these circumstances, equity and good conscience demand that Defendants give restitution for their receipt of the benefits that Plaintiffs conferred, in an amount equivalent to the reasonable value of the services they rendered.

90.     Defendants have failed and refused to pay such sum and the amount remains unpaid.

91.     Plaintiffs have been damaged by Defendants' retention of the benefits conferred and non-payment.

**SEVENTH CAUSE OF ACTION**
**IMPLIED IN FACT CONTRACT**
**AGAINST ALL DEFENDANTS EXCEPT NEVINS**

92.     Plaintiffs repeat and incorporate by reference the allegations contained in the above paragraphs as though fully set forth herein.

93.     Plaintiffs met with and/or interacted with Defendants on multiple occasions, as detailed *supra*, and provided Defendants with novel ideas, information and insight relating to

modern psychoanalysis, neuro-psychoanalysis, neuroeconomics and the subject matter that eventually became the focus of the "*Billions*" series.

94.     Each of these interactions with Defendants was undertaken with an understanding that, in exchange for the original ideas and information that Plaintiffs were providing to Defendants, Plaintiffs would receive compensation.

95.     Plaintiffs' novel ideas are not part of the public domain and therefore cannot be used by others without impunity.

96.     To this date, Defendants have refused to compensate or credit Plaintiffs, instead choosing to continue their unauthorized use of Plaintiffs' original subject matter.

97.     As a result of the foregoing, Plaintiffs have suffered and will continue to suffer, damages and injury.

## EIGHTH CAUSE OF ACTION
### MISAPPROPRIATION
### AGAINST ALL DEFENDANTS EXCEPT NEVINS

98.     Plaintiffs repeat and incorporate by reference the allegations contained in the above paragraphs as though fully set forth herein.

99.     Defendants have misappropriated, copied and used, and continue to misappropriate, copy, and use, Plaintiffs original ideas and their copyrighted material.

100.     Upon information and belief, Defendants' misappropriation of, copying of, and use of Plaintiffs' original ideas and copyrighted material has been done with Defendants' knowledge of Plaintiffs' rights therein and with an intent to trade upon and pirate away the substantial reputation and goodwill rightly belonging to Plaintiffs.

101.    Such wrongful misappropriation was done intentionally and has and will continue to cause confusion, mistake, or deception among purchasers, potential purchasers, the public, and/or the trade.

102.    As a result of the foregoing, Plaintiffs have suffered and will continue to suffer irreparable harm and injury.

**NINTH CAUSE OF ACTION**
**ACCOUNTING**
**AGAINST ALL DEFENDANTS EXCEPT NEVINS**

103.    Plaintiffs repeat and incorporate by reference the allegations contained in the above paragraphs as though fully set forth herein.

104.    Plaintiffs have the right to access the books and records of the entities, including all of the financial information set forth therein.

105.    Defendants, as manager(s) or managing member(s) of the entities, have maintained and continue to possess the books and records of the entities that Plaintiffs are lawfully entitled to access.

106.    To date, Defendants have failed to disclose and Plaintiffs have been deprived of the knowledge of the financial status of the entities.

107.    The information regarding the financial status of the entities has been deliberately withheld from Plaintiff by Defendants.

108.    Defendants, as Manager or Managing Member of the entities here at issue, owe a fiduciary duty to Plaintiff.

109.    Defendants have a duty to account, have failed and refused to do so, and have never rendered an accounting of the financial status and operations of the entities.

110.    As a result of the foregoing, Plaintiffs have suffered and will continue to suffer irreparable harm and injury.

111.    Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment in their favor and against Defendants, each and every one of them, as follows:

A.    That Defendants, except Nevins, be adjudged to have willfully infringed Plaintiffs' valid, federally protected, copyrighted work in violation of 17 U.S.C. §§ 101 et seq.;

B.    That Defendants CBS, Showtime, and Nevins, be adjudged to have contributorily and vicariously infringed Plaintiffs' copyrighted work and/or induced infringement of Plaintiffs' copyrighted work;

C.    That Defendants, as well as all persons acting under Defendants' direction, control, permission, or authority, and all persons acting in concert therewith, be preliminarily and permanently enjoined from infringing Plaintiffs' copyrighted work, including producing, reproducing, preparing, displaying, performing, distributing, and/or offering for sale derivative or substantially similar works;

D.    That Defendants' items and materials that infringe Plaintiffs' copyright, as well as other articles by which copies of the works embodied in Plaintiffs' copyright may be reproduced, be impounded pursuant to 17 U.S.C. § 503(a); that Defendants' items and materials that infringe Plaintiffs' copyright, as well as all other articles by which copies of the works embodied in Plaintiffs' copyright may be reproduced, be destroyed pursuant to 17 U.S.C. § 503(b);

      E.      That Defendants be required to account to Plaintiffs for all profits derived from their use of Plaintiffs' work and their production, reproduction, preparation, display, performance, and distribution based on Plaintiffs' work in all media, from all sources, worldwide;

      F.      Awarding to Plaintiffs all damages, including future damages, that they have sustained or will sustain as a consequence of the acts complained of herein, and that Plaintiffs be awarded any profits derived by Defendants as a result of said acts, or as determined by said accounting;

      G.      Awarding to Plaintiffs punitive damages;

      H.      That Defendants be ordered to pay Plaintiffs the full costs of this action including Plaintiffs' reasonable attorneys' fees and expenses;

      I.      That Defendants be ordered to pay Plaintiffs pre-judgment and post-judgment interest on all application damages; and

      J.      That Plaintiffs be awarded such other and further relief as the Court deems just and proper.

Dated:  New York, New York
      December 31, 2018            CKR LAW LLP

                                     By: /s/ Rosanne E. Felicello_____
                                   Rosanne E. Felicello
                                   Michael James Maloney
                                   1330 Avenue of the Americas, 14th Floor
                                   New York, New York 10019
                                   Tel. (212) 259-7300
                                   rfelicello@ckrlaw.com
                                   mmaloney@ckrlaw.com

                                   *Attorneys for Plaintiffs Denise Shull and The ReThink Group, LLC*