UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
----------------------------------------------------------x
DENISE K. SHULL and THE RETHINK
GROUP, INC.,

                Plaintiffs,

        v.

ANDREW ROSS SORKIN, BRIAN
KOPPELMAN, DAVID LEVIEN, DAVID
NEVINS, TBTF PRODUCTIONS INC.,
SHOWTIME NETWORKS INC., and CBS
CORPORATION,

                Defendants.
----------------------------------------------------------x

Civil No.: 18 Civ. 12400 (GPD)

**ORAL ARGUMENT REQUESTED**

# MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Elizabeth A. McNamara
Rachel F. Strom
Jamie S. Raghu
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230
Facsimile: (212) 489-8340

*Attorneys for Defendants Andrew Ross Sorkin, Brian Koppelman, David Levien, David Nevins, TBTF Productions Inc., Showtime Networks Inc., and CBS Corporation*

**TABLE OF CONTENTS**

                                                       **Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.     PLAINTIFFS FAIL TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT.................................................................................................. 2

           A.    The Characters Of Shull And Wendy Are Not Substantially Similar ............................................................................................................ 3

           B.    *Billions* Does Not Share Any Actual Expression With *Market Mind Games* .................................................................................................. 5

           C.    Defendants Correctly Applied the Discerning Ordinary Observer Test, But Under Any Test, There Is No Substantial Similarity Between The Works ..................................................................................... 8

    II.    ALL BUT ONE OF PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED BY THE COPYRIGHT ACT ....................................................... 11

    III.   PLAINTIFFS FAIL TO PLAUSIBLY STATE THE NECESSARY ELEMENTS OF THEIR STATE LAW CLAIMS .............................................. 12

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arden v. Columbia Pictures Indus., Inc.*,
   908 F. Supp. 1248 (S.D.N.Y. 1985)...........................................................................................3

*Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*,
   178 F. Supp. 2d 198 (E.D.N.Y. 2001), *rev'd*, 393 F.3d 312 (2d Cir. 2004)............................15

*Bondar v. LASplash Cosmetics*,
   No. 12 Civ. 1417, 2012 WL 6150859 (S.D.N.Y. Dec. 11, 2012)............................................13

*Boule v. Hutton*,
   328 F.3d 84 (2d Cir. 2003)......................................................................................................15

*Brown v. Time Warner, Inc.*,
   287 F. Supp. 3d 380 (S.D.N.Y. 2017).......................................................................................9

*Canal+ Image UK Ltd. v. Lutvak*,
   773 F. Supp. 2d 419 (S.D.N.Y. 2011).......................................................................................9

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*,
   150 F.3d 132 (2d Cir. 1998)......................................................................................................8

*Chambers v. Weinstein*,
   44 Misc. 3d 1224(A), 997 N.Y.S.2d 668 (Sup. Ct. N.Y. Cty. 2014), *aff'd,* 135
   A.D.3d 450, 21 N.Y.S.3d 892 (1st Dep't 2016) .....................................................................15

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23, 123 S.Ct. 2041 (2003)........................................................................................12

*Fox News Network, LLC v. TVEyes, Inc.*,
   43 F. Supp. 3d 379 (S.D.N.Y. 2014).......................................................................................12

*Hogan v. DC Comics*,
   48 F. Supp. 2d 298 (S.D.N.Y. 1999).........................................................................................3

*Integrative Nutrition, Inc. v. Acad. of Healing Nutrition*,
   476 F. Supp. 2d 291 (S.D.N.Y. 2007).....................................................................................11

*Kaminksy v. Khan*,
   23 A.D.2d 231, 259 N.Y.S.2d 716 (1st Dep't 1965) ..............................................................15

*Mallery v. NBC Universal, Inc.*,
   No. 07 Civ. 2250 (DLC), 2007 WL 4258196 (S.D.N.Y. Dec. 3, 2007), *aff'd,*
   331 F. App'x 821 (2d Cir. 2009) ..............................................................................................9

*Ringgold v. Black Entm't Television, Inc.*,
    126 F.3d 70 (2d Cir. 1997)..................................................................................................9, 10

*Rodriguez v. Heidi Klum Co., LLC*,
    No. 05 CIV. 10218 (LAP), 2008 WL 4449416 (S.D.N.Y. Sept. 30, 2008)...............................9

*Rose v. Hewson*,
    No. 17CV1471 (DLC), 2018 WL 626350 (S.D.N.Y. Jan. 30, 2018) ......................................10

*Samara Brothers, Inc. v. Wal–Mart Stores, Inc.*,
    165 F.3d 120 (2d Cir. 1998), *rev'd in part*, 529 U.S. 205 (2000)............................................12

*Sandoval v. New Line Cinema Corp.*,
    147 F.3d 215 (2d Cir. 1998)......................................................................................................9

*Sheldon Abend Revocable Trust v. Spielberg*,
    748 F. Supp. 2d 200 (S.D.N.Y. 2010)........................................................................................5

*Shepard v Eur. Pressphoto Agency*,
    291 F. Supp. 3d 465 (S.D.N.Y. 2017)......................................................................................12

*Smith v. Weinstein*,
    578 F. Supp. 1297 (S.D.N.Y. 1984)*, aff'd*, 738 F.2d 419 (2d Cir. 1984) .................................4

*Songbird Jet Ltd., Inc. v Amax, Inc.*,
    581 F. Supp. 912 (S.D.N.Y. 1984) .........................................................................................13

*Stadt v. Fox News Network LLC*,
    719 F. Supp. 2d 312 (S.D.N.Y. 2010)......................................................................................12

*TufAmerica, Inc. v Diamond*,
    968 F. Supp. 2d 588 (S.D.N.Y. 2013)......................................................................................10

*Walker v. Time Life Films, Inc.*,
    784 F.2d 44 (2d Cir. 1986)........................................................................................................9

*Warner Bros. Entm't Inc. v. RDR Books*,
    575 F. Supp. 2d 513 (S.D.N.Y. 2008)......................................................................................10

*Williams v. Crichton*,
    84 F.3d 581 (2d Cir. 1996).....................................................................................................8, 9

*Wolo Mfg. Corp. v. ABC Corp.*,
    349 F. Supp. 3d 176 (E.D.N.Y. 2018) .....................................................................................15

**State Statutes**

New York Civil Practice Laws and Rules § 215(3).......................................................................13

Defendants[1] submit this reply memorandum of law in further support of their motion to dismiss the Complaint with prejudice and for an award of attorneys' fees and costs.

## PRELIMINARY STATEMENT

On this motion, Defendants established that Plaintiffs' copyright claims must be dismissed because *Billions* and *Market Mind Games* are not remotely similar – let alone "substantially similar" – and in fact have dramatically different plots, characters, settings, themes, and "total concepts and feel."  In opposition, Plaintiffs do not even attempt to actually compare the works' respective plots, settings, themes, or total concept and feel.  And for good reason:  there is no similarity.  Instead, Plaintiffs retreat to three overlapping arguments:  *first*, that the Denise Shull and Wendy Rhoades characters are substantially similar because they are both in-house female performance coaches at hedge funds who counsel clients about their emotions.  Yet, this similarity remains nothing more than an abstract idea and when one examines the actual *expression* (the only thing that counts) of this idea as embodied in the respective characters, the expressions are unquestionably different.  *Second,* with a handful of examples, Plaintiffs claim that *Billions* includes "nearly identical" or "word-for-word" copying of "statements or observations" from *Market Mind Games.*  But, even a cursory review of these examples reveals that there is no actual taking of *any* protectible language, beyond a common word (like "alpha") or a similar concept, which by definition is not actionable.

*Finally,* because Plaintiffs' copyright claims do not meet the ordinary observer test – which the Second Circuit has used for decades when comparing two narrative works, as here – Plaintiffs ask this Court to use a different test, either the "quantitative/qualitative" analysis or the "fragmented literal similarity" test.  But this suggestion of a different test is beside the point

---

[1] Defined terms from Defendants' opening motion are used herein unless otherwise defined.

1

because under *any* of these tests, Plaintiffs' copyright claims fail. When one reviews and compares the actual works – using any method – only one conclusion can be reasonably reached: *Billions* and *Market Mind Games* are not substantially similar and dismissal of this meritless infringement claim is warranted.

In a cursory fashion, Plaintiffs attempt to save their state law claims by arguing that they are not preempted by the Copyright Act – even though six of them are based on nothing more than an alleged taking of *Market Mind Games* or Shull's "fictional" character and are indeed duplicative. And Plaintiffs cannot bootstrap the remaining right of publicity claim by relying on news reports that appeared years before *Billions*. Any claim arising out of the earlier press is time-barred, Plaintiffs do not dispute that Shull's actual name or likeness is not used in *Billions*, and by no means do news reports or dramatic television programs constitute "trade or advertising" as the law requires.

For the reasons stated herein and in Defendants' opening motion, Defendants respectfully request that this Court dismiss Plaintiffs' Complaint in its entirety, and do so with prejudice since Plaintiffs do not request leave to amend their Complaint or provide any reason to suggest that amendment could remedy the deficiencies identified by Defendants.

## ARGUMENT

### I. PLAINTIFFS FAIL TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT

In their moving brief, Defendants painstakingly compare *Market Mind Games* and *Billions* and demonstrate conclusively that when stripped of their unprotectible elements, the respective works are not remotely similar, requiring dismissal of this action. Whether focusing on the Shull and Wendy characters, or the actual expression in *Market Mind Games* and *Billions*, and under any test of substantial similarity, Plaintiffs have not, and cannot, establish that the two

works at issue are substantially similar.[2]

### A. The Characters Of Shull And Wendy Are Not Substantially Similar

By focusing almost exclusively on the abstract fact that both the Shull and Wendy characters are female hedge fund performance coaches, Plaintiffs ignore the controlling law dictating that to establish character infringement the "bar is set high" and courts look "at the 'totality of [the characters'] attributes and traits as well as the extent to which the defendants' characters capture the 'total concept and feel' of figures in [plaintiff's work]." *See* Mot. at 18. Indeed, time and again courts in this Circuit dismiss copyright claims when the alleged similarity between characters is far more significant than a shared gender and occupation, on which Plaintiffs' claim primarily rests. Consider, for example, the two protagonists at issue in *Arden* who were both self-centered bachelors in their mid-30's pursuing love interests that became trapped in the highly innovative situation of repeating days. *Arden v. Columbia Pictures Indus., Inc.*, 908 F. Supp. 1248, 1261 (S.D.N.Y. 1985) (comparing the novel, *One Fine Day*, and film, *Groundhog Day*). There, as here, the similarities were "superficial" and existed "at a level of abstraction too basic to permit any inference that defendants wrongly appropriated any 'expression' of plaintiff's ideas." *Id.*; *see also Hogan v. DC Comics*, 48 F. Supp. 2d 298, 310 (S.D.N.Y. 1999) (characters not sufficiently similar even though both were white male half-human/half-vampires named Nicholas Gaunt with pale skin and scraggly hair that sought to "learn [the truth] about their origins").[3] When the expressions of the actual characters are compared, it is clear that the full-blown fictional character of Wendy in *Billions* and the stick-

---

[2] Plaintiffs do not dispute, nor can they, that this issue is ripe for resolution on a motion to dismiss. Mot. at 12-13.
[3] Inexplicably, Plaintiffs argue that "Defendants do not address directly the substantial similarity" of the two characters (Opp. at 2), when Defendants' motion establishes why the characters are not similar, beyond their abstract occupation. Mot. at 18-20. Similarly, Plaintiffs contend that Defendants argue that Shull was an unprotectible stock character. Opp. at 2, 18. To the contrary, Defendants assert that the depiction of Shull in *Market Mind Games* is unprotectible not because she is a "stock character" but because she reflects an abstract concept – female performance coach – not a fully realized character that was or could be appropriated. Mot. at 18-20.

3

figure representation of Shull in *Market Mind Games* are dramatically distinct. Mot. at 18.

What dooms Plaintiffs' character claim, and what they fail to grapple with, is that the Shull character in *Market Mind Games* is an empty suit, she has an occupation but otherwise exists as nothing more than a vehicle to communicate Shull's "new philosophy of risk." *See*, *e.g., Market Mind Games* at 7, 9. Plaintiffs claim Shull is "fully formed" (Opp. at 17), but in fact, the reader knows nothing about her beyond her occupation. *Market Mind Games* includes no physical description of Shull, nothing about her background, how she dresses, her personal life, whether she is married, has children or anything else. Wendy in *Billions*, in stark contrast, is a fully realized and vividly depicted character. The viewer understands her power and dominance (not just because of her sex life), sees her wealth, where she lives, what she looks like, who she is married to, and how her personal life intersects with her professional life. And it is Wendy's complex and conflicted role as the woman-in-the-middle between her boss, Axe, and her husband, U.S. Attorney Chuck, that drives the narrative. Mot. at 19-20. In short, "[n]o character infringement claim can succeed unless plaintiff's original conception sufficiently developed the character, and defendants have copied this development and not merely the broader outlines." *Smith v. Weinstein*, 578 F. Supp. 1297, 1303 (S.D.N.Y. 1984)*, aff'd*, 738 F.2d 419 (2d Cir. 1984).

Here, there is no "character" of Denise Shull outside of her occupation and her psychological theories for trading. At bottom, the alleged similarity between Wendy and the representation of Shull is based on nothing more than the unprotectible idea that both are female performance coaches who counsel clients on their emotions. *See* Opp. at 20 ("Defendants have not pointed to even one other expression of a female in-house performance coach at a hedge

4

fund.").[4]  But the unprotectible abstract idea of a performance coach working at a hedge fund is not transformed into protectible expression by making the performance coach a woman.  *See*, *e.g., Sheldon Abend Revocable Trust v. Spielberg*, 748 F. Supp. 2d 200, 208 (S.D.N.Y. 2010) (the murderers next door in Spielberg's *Disturbia* and the classic *Rear Window* are not similar except in terms of "age, sex, and status," which does not state a claim).

### B. *Billions* Does Not Share Any Actual Expression With *Market Mind Games*

Plaintiffs' contention that *Billions* engaged in "literal copying" by taking "particular phrases" and scenes "virtually word-for-word" from *Market Mind Games* can be readily disposed of by reviewing the actual works, not Plaintiffs' conclusory and false characterizations. *See* Opp. at 10, 17, 21.  When the actual language used in the two works is compared, particularly in context of the entirely distinct characters and storylines, it is clear that *Billions* contains <u>no actual expression whatsoever</u> taken from *Market Mind Games* and, if there are any similarities at all, they are of unprotectible ideas.[5]

Plaintiffs begin by focusing on their claim that in the pilot episode of *Billions* Wendy makes "multiple statements" that are "nearly identical" to those made by Shull in *Market Mind Games.*  Opp. at 10.  Specifically, Plaintiffs argue that both characters address the idea that physical wellbeing – eating, sleeping, exercising – is important because, as observed in *Market Mind Games,* "[t]rading is actually a *physical* game."  *Id.*  But, Plaintiffs ignore that in *Market Mind Games* Shull herself admits that this is nothing more than a ubiquitous idea:  "These points

---

[4] *See also id.* at 17 ("the unique expression of Plaintiffs' ideas, concepts, and principles **in the form of the character 'Denise'** and the coaching of male traders in the utilization of their emotions for profit is protectible expression"); *id.* at 20 (characterizing the "substantial similarity" between Shull and Wendy as "that of a female performance coach advising highly competitive men how to use their emotions to out-compete others.") (all emphasis added).
[5] The examples of allegedly "substantially similar dialogue and protected expression" listed by Plaintiffs in Exhibit 3 to their counsel's declaration (which are never actually discussed in their opposition) fail for the same reasons as the three examples discussed directly below.  As is clear from comparing the exhibit and the works themselves, there is no literal copying and any alleged similarities are only of unprotectible ideas.  *See* Dkt. 62-3.  Even reading Plaintiffs' exhibit itself, one cannot find any similarity.  *Id.*

5

are so obvious . . . . We know we should eat better, get more exercise, and get to bed earlier . . . back in the 1990's, when I actually hired a psychological trading coach [ ] she told me the same thing. . ." Mot. at 15-16 (citing *Market Mind Games* at 115). Next, Plaintiffs argue that the Wendy and Shull characters both identify the "same concept" of "alpha." Opp. at 10. But by definition a concept – expressed differently – is similarly unprotectible. Mot. at 17 n.9.

And any notion that "literal copying" has occurred is put to rest by a side-by-side comparison of the actual language used in *Market Mind Games* and *Billions:*

| **Shull in *Market Mind Games*** | **Wendy in *Billions*** |
|---|---|
| At a seminar at the newly created hedge fund, Shull explains that "[t]rading is actually a *physical* game," "[s]leep is an edge," "eating properly . . . adds to that physical-psychological edge," and that "exercise… counts as psychological capital." Opp. at 10 (quoting *Market Mind Games* at 176-77) | In a one-on-one session with a trader, Wendy asks him "Have you been eating, sleeping, exercising?" Opp. at 10 (quoting *Billions* S1:E1). |
| At two separate workshops, Shull explains that "[j]udgment calls must be made to fill in the gap between where the numbers leave off and 'alpha' – or exceptional performance – begins" and that overconfidence can lead to giving back "lots of our hard earned 'alpha'." Opp. at 10 (quoting *Market Mind Games* at 112, 132) | In a one-on-one session with a trader, Wendy tells the trader that he is "ignoring the quiet [voice] inside telling you where the alpha is. Now that's the voice that got you here. And it's still there if you are willing to listen." Opp. at 19 (quoting *Billions* S1:E:1.) |

In these examples, Plaintiffs focus on the use of four words: "eat[ing,]" "sleep[ing,]" "exceris[ing,]" and "alpha." Surely Plaintiffs are not claiming that they have a copyright interest in these words. Moreover, the different meaning of the language as used in each work is underscored by the distinct context of the respective scenes. Shull's ideas about exercise or "alpha" are presented in large group settings (a seminar and workshops) that contain no personal interactions, while the scene in *Billions* depicts a one-on-one counseling session between doctor and patient. For example, the reference to "alpha" occurs in a session between Wendy and a

6

trader who is in a slump where she tells him to listen to his "quiet" alpha "voice," then to pump him up has him stand up and beat his chest while repeating that he made $7.2 million last year. *See* Mot. at 17 n. 9.  Shull's dry lecture carries none of this drama.

Next, Plaintiffs argue that the scene where Shull walks Michael through a bad trade in *Market Mind Games* is "eerily similar" to a scene where Wendy and Axe discuss a bad trade in *Billions*, claiming that the scene is copied "almost word-for-word."  Opp. at 11, 21.  Again, the actual expression in the respective scenes is not remotely similar, let alone a "literal copy":

| Shull in *Market Mind Games* | Wendy in *Billions* |
|---|---|
| "Haven't you told me in the past that one of the problems you would like to solve is getting stubborn? You can be assured that that trait, if you want to call it that, isn't *just* being stubborn. There is a fractalemotional context that has been with you for a long time. Undoubtedly, it served you well in getting through challenging moments in school or fighting for the bank job or even being willing to take on this hedge fund challenge. In fact, when the pattern first starting [*sic*] coming together, I am sure it served you well. It is acting out anger, and if we do that consciously and intentionally, it can be our best ally. But when we are doing so without really knowing who or what we are trying to retaliate against, it tends neither to serve our best interests nor to make us money."<br>Opp. at 11 (citing *Market Mind Games* at 221) | "Look, you want me to fix the part of you that makes money. But it is attached to the rest, so... Like I said, this is gonna take a little while. . . . Maybe your self-image is creating... a blind spot. . . . Well, let's assume your blind spot usually works for you. It's fairly essential if you don't feel indestructible like Superman. How are you gonna risk billions every morning? But it's not working for you now. So you need to figure out what part of your self-image is false. And then you either need to live up to it or lose it."<br>Opp. at 11 (citing *Billions*, S1:E11). |

The obviously distinct language, with not a single shared phrase, becomes even further distinguishable when one looks at the scenes' context and considers the characters' motivations. In *Market Mind Games*, Michael's bad trade resulted from sleep deprivation and a "fractal pattern" of stubbornness triggered by his brother's accident.  In *Billions,* Axe's bad trade comes on the heels of his colleague's death (who Axe was using to feed false information to the FBI) after Axe intentionally withheld life-extending care from him to ensure that he would not testify

against Axe. While Michael stubbornly pressed forward (but did nothing wrong), Axe unconsciously punished himself for ushering in a colleague's death to save his own skin. Mot. at 17-18. Not only do these scenes not use similar language but they share nothing in common beyond the abstract idea of traders trying to learn from bad trades. If Plaintiffs' examples are the best evidence they have, it just underscores they have no claim. No actual protectible expression from *Market Mind Games* is used in *Billions.*

### C. Defendants Correctly Applied the Discerning Ordinary Observer Test, But Under Any Test, There Is No Substantial Similarity Between The Works

In the context of narrative works (like *Market Mind Games* and *Billions*) that contain both protectible and unprotectible elements, courts in the Second Circuit for decades have employed the "discerning ordinary observer" or "total concept and feel" test to compare the works. *See Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996) (quoting *Knitwaves, Inc. v. Lollytogs, Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995)). Plaintiffs strain to avoid this analysis because in reality, as Defendants established, when one compares *Market Mind Games* and *Billions* the inescapable conclusion is that they are radically distinct in their plot, characters, settings, themes, and total concept and feel, the recognized building blocks to a narrative work. Mot. at 14-21.[6]

Recognizing that Plaintiffs' infringement claims cannot succeed under the discerning ordinary observer test, Plaintiffs assert that two different tests – the "quantitative/qualitative approach" or the "fragmented literal similarity" test – should apply. While the Second Circuit has recognized a number of different tests for determining substantial similarity, these tests are generally applied when the Court is comparing copyrighted works from entirely different

---

[6] Plaintiffs' half-hearted effort to address the "ordinary observer test" should be rejected. They do no more than inject a laundry list of supposedly common themes with no foundation, observe that the settings are similar because lectures and office spaces are used, or, most incredibly, that the straight-laced business man, Michael in Plaintiffs' work, is "substantially similar" to the corrupt Bobby "Axe" Axelrod in *Billions*. Opp. at 22.

8

disciplines. *See*, *e.g., Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 138-41 (2d Cir. 1998) (comparing an unauthorized non-narrative *Seinfeld* trivia book to the situational comedy television show *Seinfeld*); *Sandoval v. New Line Cinema Corp.,* 147 F.3d 215, 216-17 (2d Cir. 1998) (copy of plaintiff's photographs in background of film); *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 75-77 (2d Cir. 1997) (copy of plaintiff's poster in background set of television show). Here, Plaintiffs' claim that "*Market Mind Games* is best categorized as a *fictional* story told by fictional characters" (Opp. at 4), belies their claim that *Market Mind Games* and *Billions* are also distinct genres that cannot be compared under the discerning ordinary observer test.[7] Having said that, the ordinary observer test is routinely used with works in different "genres" or "mediums." *See*, *e.g.*, *Williams*, 84 F.3d at 582, 588 (comparing children's books with novel and movie); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 46, 51 (2d Cir. 1986) (comparing book with film); *Brown v. Time Warner, Inc.*, 287 F. Supp. 3d 380, 383 (S.D.N.Y. 2017) (comparing television series and short story); *Rodriguez v. Heidi Klum Co., LLC*, No. 05 CIV. 10218 (LAP), 2008 WL 4449416, at *1, *4 (S.D.N.Y. Sept. 30, 2008) (comparing reality television series and treatment); *Mallery v. NBC Universal, Inc.*, No. 07 Civ. 2250 (DLC), 2007 WL 4258196, at *1, *8 (S.D.N.Y. Dec. 3, 2007) (comparing book and television series), *aff'd,* 331 F. App'x 821 (2d Cir. 2009). Based on this well-established case law, Defendants properly applied the discerning ordinary observer test.

But, when applying any test for substantial similarity, courts first eliminate all unprotectible ideas and then determine if the protectible expression is substantially similar between the two works. *See Canal+ Image UK Ltd. v. Lutvak*, 773 F. Supp. 2d 419, 440

---

[7] Plaintiffs falsely state that Defendants "ignore[d]" the fictional nature of *Market Mind Games* and tried to "mislead the Court." Opp. at 4. Yet, Defendants' motion recounted at length the fictional narrative and characters in Plaintiffs' work and distinguished them in employing the discerning ordinary observer test. Mot. at 5-7, 14-20.

9

(S.D.N.Y. 2011) ("copyright infringement requires substantial similarity between protectible aspects of the allegedly infringing and infringed works."). Under the quantitative/qualitative approach "[t]he quantitative component addresses the amount of the copyrighted work that is copied, while the qualitative component addresses the copying of protected expression, as opposed to unprotected ideas or facts." *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 534 (S.D.N.Y. 2008). Under the "fragmented literal similarity" test, as its name makes clear and as Plaintiffs acknowledge, there needs to be "exact copying of a portion of a work" in order to find infringement. *Ringgold,* 126 F.3d at 75 n.3 (plaintiff's actual poster used as set dressing in a show); *TufAmerica, Inc. v Diamond*, 968 F. Supp. 2d 588, 597 (S.D.N.Y. 2013) ("literal copying" of samples from plaintiff's music used in defendant's music); Opp. at 15.

Yet, here, Plaintiffs never establish the necessary foundation for either the quantitative/qualitative or the fragmented literal similarity test, *i.e.*, that *Billions* literally or substantially copies from *Market Mind Games.* Instead, Plaintiffs once again turn to the same two arguments that fail under any test: that the character of Wendy in *Billions* is substantially similar to Shull's depiction in *Market Mind Games* and that *Billions* "literally" copied actual expression from Plaintiffs' work. Opp. at 13-16, 21. But, as established above, neither proposition finds any support in the actual works at issue. *See supra* 3-8; *Rose v. Hewson*, No. 17CV1471 (DLC), 2018 WL 626350, at *6 (S.D.N.Y. Jan. 30, 2018) (dismissing infringement claim where there was no "literal[]" or "near literal[]" copying because "[t]hat level of copying is required to pursue an infringement claim under the fragmented literal similarity test.").

Whichever test the Court applies, Plaintiffs have not and cannot pass the threshold inquiry of demonstrating that the works share protectible elements. Under any test, only one conclusion can be reached after comparing *Market Mind Games* and *Billions* and stripping both

10

works of their unprotectible elements: there is no similarity between the protectible elements of the works. As such, Plaintiffs fail as a matter of law to state a claim for copyright infringement.[8]

## II.   ALL BUT ONE OF PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED BY THE COPYRIGHT ACT

Plaintiffs' argument that their state law claims include the required "extra element" to avoid preemption simply ignores that this "extra element" must be "qualitatively different" from a copyright infringement claim. Mot. at 22 (citing *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004)).[9]

*First*, and as a prime example, Plaintiffs assert that their common law unfair competition claim is not preempted because "likelihood of confusion" constitutes an "extra element." Opp. at 24. But, their argument ignores that Plaintiffs' allegation of "actual confusion" is solely based on Defendants' purported unauthorized use of the Shull character. *See* Opp. at 25 (asserting "actual confusion between Wendy and Denise"). Such claims are, in fact, preempted as a matter of law. *See*, *e.g., Integrative Nutrition, Inc. v. Acad. of Healing Nutrition*, 476 F. Supp. 2d 291, 296 (S.D.N.Y. 2007) (unfair competition claim preempted where "[t]he core of the unfair competition claim is the plaintiff's allegation that similarities between [plaintiff's] Intellectual Property and the Plagiarized Website will cause confusion among the public.").

*Second*, Plaintiffs argue their misappropriation claim is not preempted because sharing "novel," ideas constitutes an "extra element" (Opp. 29-30), but, as detailed below, Plaintiffs have not identified a single novel idea they shared. *Infra* at 14-15. In any event, all of Plaintiffs' so-called "novel" ideas were in her copyrighted book and "misappropriation claims grounded solely

---

[8] Plaintiffs' claims of contributory and vicarious copyright infringement must also be dismissed because Plaintiffs have not plausibly alleged a claim of direct copyright infringement, and alternatively, because their conclusory allegations are insufficient to state a claim. *See* Mot. at 22 n. 11.

[9] Plaintiffs fail to present any arguments against the preemption of their unjust enrichment and accounting claims, and the Court should find them preempted for the reasons stated in Defendants' motion. Mot. at 22-26.

in the copying of a plaintiff's protected expression are preempted by section 301." *Fox News Network, LLC v. TVEyes, Inc.*, 43 F. Supp. 3d 379, 400 (S.D.N.Y. 2014) (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716, 717 (2d Cir. 1992)).

*Third,* Plaintiffs' reliance on a single outdated and reversed case to save their GBL 349 reverse passing off claim ignores the "well settled" law "that a claim for reverse passing off predicated on the theory that defendant's product replicates plaintiff's expressions contains no extra element and is therefore preempted." *Shepard v Eur. Pressphoto Agency*, 291 F. Supp. 3d 465, 476 (S.D.N.Y. 2017) (citing cases).[10] And that is exactly what Plaintiffs improperly try to allege here by claiming only that Defendants "knowingly misrepresent[ed] to consumers that Defendants are the creators of the protectible aspects of Plaintiffs' work." Opp. at 26.

*Lastly*, Plaintiffs' reliance on *Forest Park* does not save their implied-in-fact contract claim. Mot. at 25-26. Plaintiffs' only argument here is that Defendants purportedly used Shull's ideas (Opp. 28-29), but that completely misses the point. *Forest Park* only finds that an implied-in-fact contract claim can avoid preemption where there is not only the use of an idea, but also the promise to pay for an idea. Plaintiffs do not contest that here, unlike *Forest Park* where the plaintiff was specifically "pitching" to "sell" her idea for a show, *Billions* was fully fleshed out – the idea had been sold to Showtime, under development and already cast – by the time Shull met with certain Defendants. Shull did not "pitch" anything to these Defendants and no terms or payment were discussed, let alone agreed upon. Mot. at 25-26. This claim is also preempted.

### III. PLAINTIFFS FAIL TO PLAUSIBLY STATE THE NECESSARY ELEMENTS OF THEIR STATE LAW CLAIMS

---

[10] Plaintiffs rely on *Samara Brothers, Inc. v. Wal–Mart Stores, Inc.*, 165 F.3d 120 (2d Cir. 1998), *rev'd in part*, 529 U.S. 205 (2000), but it was "decided prior to the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 123 S.Ct. 2041 (2003), which held that reverse passing off claims were the proper domain of copyright law, and subsequent decisions have held that reverse passing off claims are preempted." *See Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 322 n.68 (S.D.N.Y. 2010).

12

Even if not preempted, Plaintiffs' opposition does nothing to save the state law claims.

*(1) Section 51.* Recognizing that Shull's "name, portrait, picture or voice" was never once used in *Billions*, Plaintiffs try to re-cast their claim by arguing that a 2013 *New York Times* article, allegedly edited by Sorkin, should be somehow considered an advertisement for *Billions*. In fact, the article never mentions *Billions* and was published more than ***two years before*** *Billions* aired and five years before Plaintiffs brought this suit. Opp. at 24; Dkt. 62-4. Plaintiffs' new argument defies both common sense and the law. A claim that relies on an article's publication from over five years ago is unquestionably barred by the one-year statute of limitations for a Section 51 claim. N.Y. C.P.L.R. § 215(3); *see also Bondar v. LASplash Cosmetics*, No. 12 Civ. 1417, 2012 WL 6150859, at *6 (S.D.N.Y. Dec. 11, 2012) ("an action for a violation . . . under Section 51 must be brought within one year of the claim's accrual."). Moreover, *New York Times* articles, like *Billions*, do not constitute "advertising or trade" as required by Section 51. Because Shull's name or image was never used in *Billions* and *Billions* is not trade or advertising, Plaintiffs' Section 51 claim must be dismissed.[11]

*(2) Unjust Enrichment.* Plaintiffs' attempt to distinguish *Songbird Jet Ltd., Inc. v Amax, Inc.*, 581 F. Supp. 912 (S.D.N.Y. 1984) cannot save their common law unjust enrichment claim. In *Songbird*, plaintiffs predicated their unjust enrichment claim on services and tax advice they gave defendant as the parties attempted to negotiate a failed contract. *Id.* at 916, 925. Here too, Plaintiffs' claim is based on the services and consulting advice Shull allegedly provided Defendants which she (alone) believed would result in a consulting agreement. As the *Songbird* court found, these services "are the common grist of negotiations aimed toward consummation of an agreement. In such circumstances, the endeavors by either side, if they fail, do not warrant a

---

[11] Plaintiffs' GBL 350 unjust enrichment claim is based on the same unavailing argument and also fails. Opp. at 27.

claim that one party has been unjustly enriched at the expense of the other." *Id.* at 926.

*(3) Unfair Competition.* Plaintiffs abandon their GBL 360-L claim (Opp. at 25), and instead rely on a common law unfair competition claim. Plaintiffs' only theory – that Defendants acted in bad faith by making Shull believe she would be compensated – fails for the same reason as their unjust enrichment claim. Not only is that theory belied by Plaintiffs' concession that neither party discussed, let alone agreed on, any payment terms, but Plaintiffs cannot, as a matter of law, turn a failed contract negotiation (even if there had been one, which there had not) into a common law tort.

*(4) Implied-in-fact contract.* Plaintiffs' claim fails because they still allege nothing more than an agreement to agree, which is not recognized under New York law. *See* Mot. 27.[12] Plaintiffs' only citation is to *Forest Park*, which was decided under California law and therefore is inapplicable on this point.

Plaintiffs' implied-in-fact contract claim also fails for the independent reason that they still have not identified a single idea Shull purportedly shared that was novel as to Defendants. Despite Plaintiffs' protestations, the parties agree on the standard (novelty as to Defendants) but Plaintiffs fail to grapple with the fact that their ideas were actually known to Defendants and, in any event, were too obvious to be protected. Mot. at 28. As *The New York Times* article cited by Plaintiffs and Plaintiffs' book make clear, performance coaches for traders "is not new" "aided by the growing popularity of literature on the behavioral science of decision making, the idea that self-awareness can lead to better decisions in business and finance is beginning to be accepted on Wall Street." Mot. at 15-16. Plaintiffs' innovative claim that certain individuals

---

[12] Plaintiffs' claim that Defendant Sorkin "requested [Shull's] assistance with the development of the female lead character" does not change the fact that no agreement has been alleged. Opp. 7. And, as the actual email shows, Sorkin did no such thing. He merely asked if he could introduce Shull to Ms. Siff. Dkt. 62-5.

14

allegedly took notes during a meeting with Shull where she discussed her unspecified "original" ideas (Opp. at 29), cannot transform these common themes into sufficiently novel ideas.

*(5) Misappropriation.* This claim should be dismissed for the same reason as the implied-in-fact contract claim – the ideas purportedly shared with Defendants were not novel.

**(6)** *Deceptive trade practices under GLB 349.* This claim must be dismissed as Plaintiffs do not and cannot claim any alleged confusion harmed consumers.[13] Mot. at 30-31. Plaintiffs' allegations of confusion willfully miss the point because, while couched in terms of consumers, they are truly about the alleged harm to Plaintiffs. *See* Opp. at 26 ("confusion in the market distorts the public knowledge about the merits of the work performed by Ms. Shull and the value of her services"). Plaintiffs' claim that she should have been given credit is precisely the type of claim that is routinely dismissed. Mot. at 31 (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (claim that plaintiff was "denied credit and profits" as an alleged co-author of *The First Wives Club* does not allege the requisite direct impact on the body of consumers")).

**(7)** *Accounting.* As Plaintiffs still do not allege the required element of a confidential or fiduciary relationship with Defendants, their accounting claim should be dismissed.[14]

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

---

[13] The cases relied on by Plaintiffs are inapposite as they focus on whether a non-consumer may bring a claim under Section 349, but nevertheless reaffirm the general requirement that there must be consumer harm. *See Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. 3d 176, 210 (E.D.N.Y. 2018) ("the gravamen of the complaint must be consumer injury or harm to the public interest ... [t]he critical question ... is . . . not whether the suit is brought by a consumer or a competitor."); *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 178 F. Supp. 2d 198, 245 (E.D.N.Y. 2001) ("The import of standing analysis under section 349 has been to distinguish cases where the Act is invoked as a private business tort from cases where the harm alleged impacts the consumer"), *rev'd*, 393 F.3d 312 (2d Cir. 2004). *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003) was based on an allegedly express false statement but here Plaintiffs do not cite any expressly false statement made about them.

[14] Since 1965, when the decision *Kaminksy v. Khan*, 23 A.D.2d 231, 238, 259 N.Y.S.2d 716, 724 (1st Dep't 1965) relied on by Plaintiffs was decided, "the law has evolved" and now "requires a fiduciary relationship as an element of an accounting claim." *Chambers v. Weinstein*, 44 Misc. 3d 1224(A), at *10, 997 N.Y.S.2d 668 (Sup. Ct. N.Y. Cty. 2014) (collecting cases), *aff'd,* 135 A.D.3d 450, 21 N.Y.S.3d 892 (1st Dep't 2016).

15

Dated: New York, New York
April 12, 2019

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: */s/ Elizabeth A. McNamara*
Elizabeth A. McNamara
Rachel F. Strom
Jamie S. Raghu
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Phone (212) 489-8230
Fax (212) 489-8340
Email:   lizmcnamara@dwt.com
         rachelstrom@dwt.com
         jamieraghu@dwt.com

*Attorneys for Defendants Andrew Ross Sorkin, Brian Koppelman, David Levien, David Nevins, TBTF Productions Inc., Showtime Networks Inc., and CBS Corporation*