**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DENISE K. SHULL and THE RETHINK GROUP, INC., <br><br>             Plaintiffs, <br><br>        v. <br><br> ANDREW ROSS SORKIN, BRIAN KOPPELMAN, DAVID LEVIEN, DAVID NEVINS, TBTF PRODUCTIONS INC., SHOWTIME NETWORKS INC., and CBS CORPORATION, <br><br>             Defendants. | Civ. No. 18-cv-12400 (GPD) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION:**
    **(I)**     **TO AMEND AND VACATE ORDER AND JUDGMENT,**
    **(II)**    **FOR LEAVE TO FILE PROPOSED FIRST AMEND**
             **COMPLAINT, AND**
    **(III)**   **TO REMAND MISAPPROPRIATION CLAIM TO STATE**
             **COURT**

FELICELLO LAW P.C.
1140 Avenue of the Americas
9th Floor
New York, New York 10036
Tel. (212) 584-7806
*Attorneys for Plaintiffs Denise K. Shull &*
*The Rethink Group, Inc.*

{00224321.1 / 3051.005}4822-8176-1963.1

I. PRELIMINARY STATEMENT ...................................................................................... 1

II. FACTS & PROCEDURAL HISTORY ........................................................................... 2

III. ARGUMENT ....................................................................................................................... 4

    A. Plaintiffs Are Entitled To Relief Under Fed. R. Civ. P. 59(E) ..................................... 4

    B. Plaintiffs Are Entitled To Relief Under Fed. R. Civ. P. 60(B) ..................................... 5

    C. Plaintiffs Should Be Granted Leave To File The First Amended Complaint ............... 7

    D. Amendment of the Complaint Is Not Futile ................................................................ 10

        1. Plaintiffs' Amended Copyright Claims Directly Addresses the Deficiencies Observed by the Court ........................................................................................ 10

        2. Plaintiffs' False Endorsement Claim Successfully States a Claim upon Which Relief May Be Granted .......................................................................................... 10

IV. PLAINTIFFS' CLAIM FOR MISAPPROPRIATION SOUNDING IN STATE LAW SHOULD BE REMANDED TO NEW YORK STATE COURT .................................... 14

V. CONCLUSION ................................................................................................................... 15

**Cases**

*A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000)......... 13

*Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 454 (S.D.N.Y. 2008).................................... 16

*Delville v. Firmenich Inc.*, 23 F. Supp. 3d 414 (S.D.N.Y. 2014) ................................. 10

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1072 (9th Cir. 2015)............ 16

*Hogan v. DC Comics*, 48 F.Supp.2d 298 (S.D.N.Y. Jan. 26, 1999) ............................. 11

*Kregos v. Associated Press, 3 F. 3d 656, 662 (2d Cir. 1993),* cert. denied, *510 U.S. 1112, 114*
    *S.Ct. 1056, 127 L.Ed.2d 376 (1994)* ................................................................ 11

*Morningside Grp. Ltd. v. Morningside Capital Grp., L.L.C.*, 182 F.3d 133, 141 (2d Cir. 1999). 18

*Nat'l Petrochemical Co. of Iran*, 930 F.2d 240, 245 (2d Cir. 1991) ............................. 13

*Nemaizer v. Baker*, 793 F.2d 58 (2d Cir. 1986).................................................... 10

*PG 1044 Madison Assocs., L.L.C. v. Sirene One, L.L.C.*, 229 F.R.D. 450 (S.D.N.Y. 2005) ....... 11

*Renxiong Huang v. Minghui.org*, 2018 U.S.Dist.LEXIS 124854 (S.D.N.Y. July 25, 2018) ....... 13

*Shabazz v. Bezio*, 511 F.App'x 28, 31 (2d Cir. 2013)................................................... 13

*Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012)........................................................ 12

*U.S. Airways, Inc.v. Sabre Holdings Corp.*, 2015 WL 8335119, at *3 (S.D.N.Y. Dec. 8, 2015) 12

White v. Samsun Electronics America, Inc., 971 F.2d 1395, 1399–401 (9th Cir. 1992), *as*
    *amended* (Aug. 19, 1992)......................................................................... 16

Williams v. Citigroup, 659 F.3d 208 (2d Cir. 2011).................................................... 13

**Statutes**

15 U.S.C. § 1125(a) ................................................................................. 16

28 U.S.C. § 1367(c)(3)............................................................................... 19

28 U.S.C. § 1447(c) ................................................................................. 19

**Other Authorities**

5 McCarthy on Trademarks and Unfair Competition § 28:15 (5th ed.) ...................................... 16

**Rules**

Fed. R. Civ. P. 15(a)(2) ................................................................................................ 12

Fed. R. Civ. Proc. 60(b) .............................................................................................. 10

Fed. R. Civ. Proc. 60(b)(1) ......................................................................................... 10

Fed. R. Civ. Proc. 60(b)(6) ......................................................................................... 12

Plaintiffs Denise K. Shull and The Rethink Group, Inc. (together, "Plaintiffs"), by and through their undersigned attorneys, hereby respectfully submit this memorandum of law in support of their motion (i) to vacate the judgment entered on October 9, 2019 and the Memorandum Decision and Order, entered on October 7, 2019, (ii) granting Plaintiffs leave to file the Proposed First Amended Complaint (annexed to the Notice of Motion as Exhibit A) against defendants Andrew Ross Sorkin ("Sorkin"), Brian Koppelman ("Koppelman"), David Levien ("Levien"), David Nevins ("Nevins"), TBTF Productions Inc. ("TBTF"), Showtime Networks Inc., ("Showtime"), and CBS Corporation ("CBS" and together with Sorkin, Koppelman, Levien, Nevins, TBTF, and Showtime, the "Defendants"), and (iii) to remand the eighth cause of action in the original Complaint (Dkt. 1), for misappropriation under state law, to state court.

## I.    PRELIMINARY STATEMENT

First, in accordance with Fed. R. Civ. P. 59(e) and Second Circuit precedent, the district court may alter or amend a final judgment to correct a clear error of law or prevent manifest injustice. Here, the Court initially granted Defendants' motion to dismiss Plaintiffs' claims in their entirety without affording Plaintiffs an opportunity to amend their complaint to state a claim.  In addition, the Court erred by considering facts outside the complaint, its attachments, or documents incorporated therein by reference. Thus, the final judgment should be vacated and Plaintiffs should be afforded the opportunity to submit an amended complaint.

Second, in accordance with Fed. R. Civ. P. 60(b), the district court may relieve a party from a final judgment if it finds (1) mistake, inadvertence, surprise, or excusable neglect; or for (6) any other reason that justifies relief. Here, the Court incorrectly applied the law of copyright and implied contract. In addition, entering judgment here with prejudice without allowing Plaintiffs even one opportunity to amend does not accord with Second Circuit precedent. Thus, the

final judgment should be vacated, and Plaintiffs should be granted leave to file an amended complaint.

Third, Second Circuit precedent instructs that in "a proper case," the district court should consider a proposed amended complaint, even after it has entered a final judgment. Here, where there were only days between the issuance of the decision and entry of judgment granting Plaintiffs' motion to dismiss with prejudice, where there has been no undue delay, and Defendants will not suffer any prejudice is the proper case. Thus, Plaintiffs should be granted leave to file an amended complaint.

Finally, this Court declined to exercise jurisdiction to determine Plaintiffs' state law misappropriation claim but has not remanded the claim to state court. Plaintiffs request in this motion that their claim for misappropriation be remanded to state court and the statute of limitations be tolled for 30 days after the date of remand.

## II.    FACTS & PROCEDURAL HISTORY

A copy of the Proposed First Amended Complaint (the "Amended Complaint"0 is annexed to the accompanying Notice of Motion as Exhibit A. A redline comparison of the Amended Complaint to the original Complaint is annexed to the accompanying Notice of Motion as Exhibit B.

Plaintiff Denise Shull is a female hedge fund performance coach who applies neuropsychoanalysis, neuroeconomics, and modern psychoanalysis in coaching hedge fund and other financial industry professionals to obtain peak performance.  Ex. A, Amended Compl. ¶ 19. In an industry perceived to be dominated by men, and a prevailing belief that success depends on emotions being "controlled" or disregarded, Shull instead coaches her clients not only to recognize and explore their emotions but to affirmatively harness them for the purpose of improving performance and profits.  *Id.* ¶ 21.

Shull's book, *Market Mind Games*, explores these issues in a *fictionalized* account of interactions between the character "Denise," modeled on herself, and others. *Id.* ¶¶ 25-26. In *Market Mind Games,* the fictional "Denise" recounts fictional lectures, group coaching meetings and individual consultations, with private clients and as an in-house performance coach to a fictional hedge fund. *Id.* During a fictional lecture, "Denise" meets a client, "Michael" and a trader Renee who ultimately come together with an associated cast of characters in various roles at the fictional hedge fund, named "Coup d'État Capital."

In and around 2012 and 2013, Defendant Sorkin began developing a pilot for a television series based in part on Shull, her book *Market Mind Games*, and a character appearing in that book, "Denise Shull." *Id.* ¶¶ 31-36. In or about February or March 2014, Defendant Sorkin, along with fellow Defendants Koppelman and Levien, sold the idea for this new television series, titled *Billions*, to Defendant Showtime. *Id.* ¶ 37. On or about August 26, 2015, Sorkin actually contacted Shull about the series *Billions* and requested her assistance with the development of the female lead character, Dr. Wendy Rhoades, a female hedge fund performance coach who helps financial professionals improve their performance by dealing with their own emotional baggage. *Id.* ¶ 38. At Sorkin's request, Shull then met with Koppelman, Levien, and the actress cast as Wendy Rhoades, to explain her work as a performance coach to hedge funds and her unique approach to trading and investing psychology. *Id.* ¶¶ 42-46. Further discussions occurred regarding possible joint promotional initiatives relating to *Billions* and *Market Mind Games*, but Defendants later stopped communicating with Shull and no joint marketing efforts ever occurred.

In January 2016, Defendant Showtime released the pilot episode of the television series *Billions*. *Id.* ¶ 57. The pilot episode of *Billions* portrays Wendy Rhoades, bearing marked similarities to Shull herself and the "Denise Shull" persona appearing in Shull's book, *Market*

*Mind Games*. *Id.* ¶ 58.  In the pilot, "Wendy" makes multiple statements and observations that are nearly identical to those made by "Denise Shull" in *Market Mind Games*. *Id.* ¶ 60.  The similarities between *Billions* and *Market Mind Games* continue through subsequent episodes. *Id.* ¶ 61-68.

On December 31, 2018, Plaintiffs brought this suit against Defendants alleging copyright infringement, a state law claim under New York Civil Rights Law Sections 50 and 51 for violation of Plaintiff Shull's right of privacy, and other state law and common law claims for injury to business reputation, deceptive trade practices, unjust enrichment, implied in fact contract, misappropriation, and failure to account. Dkt. No. 1, Compl.  On March 8, 2019, Defendants filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Dkt. No. 45, Defendants' Motion to Dismiss Plaintiffs' Complaint.  On October 4, 2019, the Court granted Defendants motion to dismiss, finding in relevant part that Plaintiffs' copyright claims did not state a claim for relief because there was not substantial similarity with the protectable elements of Plaintiffs' work and that Plaintiffs' right of privacy claim did not state a claim for relief because it did not allege that Defendants used Shull's name, picture, or persona in order to advertise *Billions*. Dkt. No. 74, Memorandum Opinion and Order.

## III.   ARGUMENT

### A.   PLAINTIFFS ARE ENTITLED TO RELIEF UNDER FED. R. CIV. P. 59(e)

In accordance with Fed. R. Civ. P. 59(e), "district courts may alter or amend judgment 'to correct a clear error of law or prevent manifest injustice.'" *Munafo v Metro. Transp. Auth.*, 381 F3d 99, 105 (2d Cir 2004). On a Rule 12(b)(6) motion to dismiss, it is clear error of law to rely on facts that were not "asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); *see also Carlin v. Davidson Fink LLP*, 852 F.3d 207 (2d Cir. 2017)(accord) and *Madu, Edozie & Madu, P.C. v.*

*SocketWorks Ltd. Nig.*, 265 F.R.D. 106, 123-124 (S.D.N.Y. 2010) (finding that a extraneous information will only be considered on a motion to dismiss where plaintiff had notice of the information, plaintiff relied on the information in framing the complaint, and there is no dispute regarding the authenticity, accuracy, or relevancy of the information).

Here, the Court improperly relied on *Defendants'* summary of the facts (citing and quoting from Defendants' memorandum of law in support of its motion to dismiss throughout its decision) instead of accepting the factual allegations set forth in the complaint as true and drawing all reasonable inferences in favor of the Plaintiffs, as it is required to do in reviewing a motion to dismiss. *See LaFaro v. N.Y. Cardiothracic Group*, 570 F.3d 471, 475 (2nd Cir. 2009) (citation omitted). In addition, the Court conducted "a quick internet search" as a means of refuting facts as alleged in the Complaint. This was improper as a matter of law.

The foregoing circumstances satisfy the requirements of Rule 59(e) and warrant the vacating of its judgment dismissing Plaintiffs' Complaint. Once the judgment is vacated, the Court should allow Plaintiffs to submit an amended complaint to address the deficiencies identified by the Court. It would be a manifest injustice to Plaintiffs for the Court to refuse to vacate the judgment and refuse to allow Plaintiffs to submit an amended complaint.

### B.    PLAINTIFFS ARE ENTITLED TO RELIEF UNDER FED. R. CIV. P. 60(b)

Pursuant to Rule 60(b), a party may seek relief from a judgment or order when (1) there has been "mistake, inadvertence, surprise, or excusable neglect," or for (6) "any other reason that justifies relief."

Rule 60(b) "should be broadly construed to do substantial justice." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (internal citations and quotation marks omitted). Relief under Rule 60(b) is warranted where "(i) there is 'highly convincing' evidence in support of the motion, (ii) the movant shows good cause for failing to act sooner, and (iii) the movant shows that granting the

motion will not impose an undue hardship on any party." *Delville v. Firmenich Inc.*, 23 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (quoted citation omitted).

Rule 60(b)(1) "encompasses judicial mistakes in applying the law" and that "relief is also appropriate where a court may have overlooked certain parties' arguments or evidence in the record." *PG 1044 Madison Assocs., L.L.C. v. Sirene One, L.L.C.*, 229 F.R.D. 450, 452 (S.D.N.Y. 2005) (internal quotation marks and citations omitted). Here, as detailed in the Proposed First Amended Complaint annexed to the notice of motion as Exhibit A, the Court has overlooked substantial evidence in the record that support Plaintiffs' claims for copyright and implied contract. Specifically, during oral argument the Court asked Plaintiffs' counsel where in the Complaint, Plaintiffs claim that there was an expectation that that Ms. Shull was to be paid for her services. Dkt. No. 74, at p.31.The Court's decision quotes the question posed to Plaintiffs' counsel, but does not quote her response, which goes on to cite to particular paragraphs from the Complaint. This analysis is fundamentally unfair and would be an injustice not to include and consider counsel's response in the analysis. Tr. at pp.59-63:18.

Moreover, the Court has misapplied the law of copyright. While it is a "principle fundamental to copyright law" that "a copyright does not protect and idea, but only the expression of an idea," *Kregos v. Associated Press, 3 F. 3d 656, 662 (2d Cir. 1993),* cert. denied*, 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994)*, "[t]he distinction between an idea and its expression is an elusive one," *Id.* at 587-588, and "the line [lies] somewhere between the author's idea and the precise form in which he wrote it down . . . protection covers the 'pattern' of the work . . . the sequence of events, and the development of the interplay of characters." *Hogan v. DC Comics*, 48 F.Supp.2d 298 (S.D.N.Y. Jan. 26, 1999) (citing Z. Chafee, *Reflections on the Law of Copyright*, 45

Colum.L.Rev. 503, 515 (1945)). The Court erred in not considering the sequence of events of *Market Mind Games* and the interplay of the characters as compared to particular events in *Billions*.

Further, the Court erred in determining that a female performance coach working in-house in a fictional hedge fund is a "stock character." Both "Wendy," on *"Billions"* and "Denise" in *Market Mind Games* are more than two dimensional characters. It is the similarity of their professional techniques, and how unique and unconventional they are in the field of performance coaching that demonstrates that "Wendy" was derived from the character of "Denise."

Rule 60(b)(6) represents "a 'grand reservoir of equitable power to do justice in a particular case,'" when the moving party "demonstrate[s] that 'extraordinary circumstances' warrant relief.'" *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012). Here, Plaintiffs were not afforded an opportunity to amend their complaint, despite it being the usual practice in this Circuit to grant leave to replead upon the grant of an initial motion to dismiss and despite Plaintiffs' request during oral argument for an opportunity to amend. *Cruz*, 742 F.3d at 523. Thus, this Court should vacate its judgment pursuant to Fed. R. Civ. P. Rule 60(b)(6) and grant Plaintiffs' leave to amend their Complaint.

## C.   PLAINTIFFS SHOULD BE GRANTED LEAVE TO FILE THE FIRST AMENDED COMPLAINT

The Federal Rules of Civil Procedure permit plaintiffs to seek leave to amend complaints at any time and such leave should be "freely give[n] … when justice so requires." Fed. R. Civ. P. 15(a)(2). The standard under Rule 15 has been described as "permissive" and "consistent with the 'strong preference for resolving disputes on the merits.'" *U.S. Airways, Inc.v. Sabre Holdings Corp.*, 2015 WL 8335119, at *3 (S.D.N.Y. Dec. 8, 2015) (*citing Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC, 797 F.3d 160, 190 (2d Cir. 2015)). "If the underlying facts or circumstances relied upon by a [movant] may be a proper subject of relief, he ought to be afforded an opportunity

to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Thus, a "motion to amend is generally denied only for 'futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.'" *U.S. Airways*, 2015 WL 8335119, at *3 (*quoting Chavis v. Chappius*, 618 F.3d 162, 171 (2d Cir. 2010)); *accord Foman*, 371 U.S. at 182.

Although ordinarily "it would be contradictory to entertain a motion to amend the complaint" after the action has been dismissed, the Second Circuit has suggested that the Court should "in a proper case" consider the nature of the proposed amendment in deciding whether it is appropriate to vacate the judgment and allow the amendment. *Nat'l Petrochemical Co. of Iran*, 930 F.2d 240, 245 (2d Cir. 1991) (quoted in *Faryniarz v. Ramirez*, 62 F.Supp.3d 240, 247 (D. Conn. 2014). While the Second Circuit has not provided clear guidance as to what constitutes "a proper case," in *Williams v. Citigroup*, the Second Circuit determined that the district court had abused its discretion in failing to determine if a plaintiff's proposed post-judgment amendments were futile before denying the motion to amend. 659 F.3d 208 (2d Cir. 2011).

Further, the Second Circuit has instructed that district courts should not dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shabazz v. Bezio*, 511 F.App'x 28, 31 (2d Cir. 2013) (quoted citation omitted), quoted in *Renxiong Huang v. Minghui.org*, 2018 U.S.Dist.LEXIS 124854 (S.D.N.Y. July 25, 2018).

Given this guidance, Plaintiffs here should be granted leave to amend the Complaint because the amendment would be their first amendment of the complaint, the proposed amendments are not futile, and granting leave to amend would in no way prejudice Defendants. Defendants were served with the Complaint in January 2019, and filed their motion to dismiss on

March 8, 2019, which the Court granted on October 4, 2019.  As is "the usual practice upon granting a motion to dismiss [Plaintiffs should be granted] leave to replead." *Cruz*, 742 F.3d at 523.  Defendants have not filed an answer and there has been no discovery.  Because the case is at such an early stage, Defendants cannot show that there will be any prejudice in allowing Plaintiffs to amend the Complaint.  *See A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (finding no undue prejudice where "[n]o trial date has yet been set, nor has discovery been completed").

Furthermore, and as discussed below, Plaintiffs' proposed Amended Complaint introduces additional allegations of fact relating to the currently asserted copyright claims and replaces the claim for violation of New York Civil Rights Law Sections 50 and 51 (protecting the right of privacy) with a claim for False Endorsement under the Lanham Act.  Ex. A, Amended Complaint ¶¶ 70-71, 88-99.  The False Endorsement claim relies on substantially similar allegations of fact as those alleged in relation to the right of privacy claim.  See Ex. B, Redline Amended Complaint ¶¶ 88-99.  Thus, Plaintiffs' Amended Complaint will not cause undue prejudice to Defendants because it only raises factual claims that are related to the events described in the original Complaint.  *See A.V. by Versace*, 87 F. Supp. 2d at 299 (finding no undue prejudice where the amended pleading did not "raise factual claims unrelated to the events in its original third-party complaint.").

Thus, Plaintiffs should be granted leave to amend because Defendants cannot meet their burden "of demonstrating that substantial prejudice would result were the proposed amendment to be granted." *Agerbrink*, 155 F. Supp. at 454.[1]

---

[1] Plaintiffs requested the opportunity to amend during oral argument, but the Court made no ruling on this request. (Transcript of proceedings held on April 18, 2019, at p. 62:13-15; 67:7-10; 76:15-20).

### D.     Amendment of the Complaint Is Not Futile

Plaintiffs should also be granted leave to amend because the proposed amendments will cure any deficiencies identified by the Court in its decision dismissing Plaintiffs claims.  Accepting all factual allegations in the proposed Amended Complaint as true, and drawing all reasonable inferences in Plaintiffs' favor, the allegations clearly give rise to an entitlement to relief.  *See Panther Partners*, 681 F.3d at 119.

1.     <u>Plaintiffs' Amended Copyright Claims Directly Addresses the Deficiencies Observed by the Court</u>

In its decision on Defendants' motion to dismiss, the Court determined that the two works at issue "do not seem to resemble each other in the least," mainly because one is an "academic work" while the other is a "television show." Dkt. No. 64, p. 19. In the attached, Proposed First Amended Complaint, Plaintiffs attempt to demonstrate the similarities between the works, even though they are in different genres. Specifically, in the Amended Complaint, Plaintiffs provide more examples of the similarities between the characters, the specific methods used by "Wendy" and "Denise" and how they are unique (proprietary to Plaintiffs) in the field of performance coaching. The Amended Complaint also describes more specific instances of "fragmented literal similarity."

2.     <u>Plaintiffs' False Endorsement Claim Successfully States a Claim upon Which Relief May Be Granted</u>

Plaintiffs' original Complaint asserted a claim for violation of New York Civil Rights Law Sections 50 and 51 based on Defendants' use of Shull's persona without her consent.  The Court dismissed that claim, holding that "Plaintiffs fail to allege any articles written by Defendants which use Shull's name, picture, or persona without her permission *in order to* advertise for *Billions*." Decision at 32.  Plaintiffs' Amended Complaint removes Sections 50 and 51 of the New York Civil Rights Law as a basis for relief and replaces it with a claim for false endorsement under the

Lanham Act based on substantially similar facts, which have been augmented to document specific instances of actual confusion.  Plaintiffs' claim for false endorsement successfully states a claim upon which relief may be granted, and therefore, amendment would not be futile.

In addition to allowing claims for trademark infringement, unfair competition, and false advertising, Section 43(a) of the Lanham Act "is an appropriate vehicle for the assertion of claims of falsely implying the endorsement of a product or service by a real person." *Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 454 (S.D.N.Y. 2008); 15 U.S.C. § 1125(a).  "The elements of a false endorsement claim under the Lanham Act are that the defendant, (1) in commerce, (2) made a false or misleading representation of fact (3) in connection with goods or services (4) that is likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services.  *Id.* at 455.

False endorsement claims are not limited to the "use of the plaintiff's identity in advertising to sell goods or services, but also include [] unpermitted use of plaintiff's identity on a product itself."  5 McCarthy on Trademarks and Unfair Competition § 28:15 (5th ed.); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1072 (9th Cir. 2015) ("[T]he plain text of the statute establishes that a viable false endorsement claim does not require that the mark be used *in connection* with separate goods to promote the purchase of those separate goods—but may be used directly *on* the defendant's goods.").

False endorsement claims are also not limited to the unauthorized use of a person's name, picture, or voice.  False endorsement claims may extend to any depiction or use of an individual's persona or character.  In *Burck v. Mars, Inc.*, for example, the court found that Burck, also known as The Naked Cowboy, had sufficiently stated a claim for false endorsement when Mars used an image of an M&M dressed in an outfit similar to the one worn by Burck.  571 F. Supp. at 455-56.

Similarly, in *White v. Samsung Electronics America, Inc.*, the Ninth Circuit held that the plaintiff, Vanna White, had raised genuine issues of material fact in her false endorsement claim based on Samsung's depiction of a robot that was dressed like the plaintiff on a Wheel of Fortune game show set.   971 F.2d 1395, 1399–401 (9th Cir. 1992), *as amended* (Aug. 19, 1992).   The Ninth Circuit held that this depiction raised "a genuine issue of material fact concerning a likelihood of confusion as to her endorsement" of Samsung's products.   *Id.* at 401.

Plaintiffs' Amended Complaint sets forth sufficient facts to state a claim for false endorsement.   Shull is depicted in Defendants' TV show *Billions* as the character Wendy Rhoades. Ex. A, Amended Complaint ¶¶ 2, 38, 40-41, 45-46, 58, 70.   Although Defendants have used a different name for the character, the similarities between Shull and Wendy Rhoades are extensive, and elicited many unsolicited comments from third parties who recognized these similarities. Amended Complaint ¶¶ 70-71.   Shull is an expert in neuroeconomics, modern psychoanalysis and neuropsychoanalysis, and the only expert combining these three fields of study and applying them to risk decision-making and performance coaching for hedge funds.   Ex. A, Amended Complaint ¶¶ 19-20.   Shull's work as a hedge fund performance coach focuses on helping clients optimize performance by dealing with their emotional baggage and exposing how their subconscious influences their market decisions.   Ex. A, Amended Complaint ¶¶ 30, 33.   On Defendants' TV show, *Billions*, Dr. Wendy Rhoades is a female hedge fund performance coach who helps financial professionals improve their performance by dealing with their own emotional baggage.   Ex. A, Amended Complaint ¶¶ 2, 38.   Furthermore, during the creation of *Billions*, Shull met with Defendants Koppelman and Levien and with the actress who was cast as Wendy Rhoades to teach them about Shull's work as a performance coach to hedge funds and other financial firms and her unique approach to trading and investing psychology.   Ex. A, Amended Complaint ¶¶ 46.

Defendants clearly used this opportunity, and Shull's book, *Market Mind Games*, to develop the character of Wendy Rhoades.  *See* Ex. A, Amended Complaint ¶¶ 42-46.

The similarity between Shull and Wendy Rhoades is further demonstrated by the numerous instances in which consumers have made the connection.  *See* Ex. A, Amended Complaint ¶¶ 70-71.

Significantly, consumers have also demonstrated actual confusion, believing that Shull is involved with or has endorsed the show.  *See* Ex. A, Amended Complaint ¶¶ 70 ("fascinating to see your fingerprints throughout the story," "have your book and it's very clear the show wouldn't be the same without you,"  "I was going to write and ask what you were going to get up to in Billions Series 2, as Ep 11 of Series 1 was "just so Shull."").  While a false endorsement claim requires only a likelihood of confusion, proof of actual confusion or deception provides convincing evidence that such likelihood exists.  *See Burck*, 571 F. Supp. 2d at 455; 5 McCarthy on Trademarks and Unfair Competition § 28:15 (5th ed.); *see also Morningside Grp. Ltd. v. Morningside Capital Grp., L.L.C.*, 182 F.3d 133, 141 (2d Cir. 1999) ("Evidence that confusion has actually occurred is of course convincing evidence that confusion is likely to occur.").

Thus, Plaintiffs' Amended Complaint sets forth sufficient allegations of fact to support a claim for false endorsement.  The character of Wendy Rhoades is a depiction of Shull as demonstrated by the extensive similarities between the character and Shull, Defendants' consultation with Shull while developing the character, and the numerous instances of consumers recognizing the character as a depiction of Shull, as described above.  *Cf. Burck*, 571 F. Supp. 2d at 455 (finding the complaint plausibly alleged that "viewers would believe that The Naked Cowboy had endorsed M&Ms" where an M&M was dressed in a similar outfit).

The depiction of Shull appears on Defendants product, the TV show "*Billions*." *Cf. Fifty-Six Hope Rd. Music*, 778 F.3d at 1072 (affirming a finding of false endorsement where an image of Bob Marley appeared on the defendants merchandise rather than in an advertisement for that merchandise); 5 McCarthy on Trademarks and Unfair Competition § 28:15 (5th ed.) ("False endorsement cases . . . are not limited to a use of the plaintiff's identity in advertising to sell goods or services, but also includes unpermitted use of plaintiff's identity on a product itself . . . .").

Shull is not involved with Defendants' show and has not endorsed it, (Ex. A, Amended Complaint ¶¶ 92), but consumers are likely to believe incorrectly, and in fact do believe, that she has endorsed the show because of the depiction of her in the form of Wendy Rhoades, as demonstrated by the examples of actual confusion identified above.

Thus, Plaintiffs' Amended Complaint sets forth sufficient allegations of fact to support a claim for false endorsement, demonstrating that the amendment would not be futile.

## IV.   PLAINTIFFS' CLAIM FOR MISAPPROPRIATION SOUNDING IN STATE LAW SHOULD BE REMANDED TO NEW YORK STATE COURT

In the Court's October 4, 2019 Memorandum Decision and Order (Dkt. No. 74) (the "Decision"), the Court did not make any ruling on the Plaintiff's eighth cause of action for common law misappropriation. *See* Decision, at pp.29-33. Instead, the Court exercised its discretion under 28 U.S.C. § 1367(c)(3) to decline to exercise supplemental jurisdiction over "[Plaintiffs'] remaining state law claims" (*i.e.*, Plaintiffs' state law claim for common law misappropriation). (*See* Decision, at p.33 n.8). However, the Court did not order that Plaintiffs' misappropriation claims be remanded to state court for further proceedings. Accordingly, the Court should issue an order, pursuant to 28 U.S.C. § 1447(c), directing the clerk to remand Plaintiffs' state law claim for misappropriation to the Supreme Court of the State of New York, New York County and tolling the statute of limitations on that claim until 30 days after remand.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Leave to Amend the Complaint should be

granted.

Dated:  New York, New York
        November 6, 2019                       FELICELLO LAW P.C.

                                               By:  __/s/ Rosanne E. Felicello_____
                                               Rosanne E. Felicello
                                               1140 Avenue of the Americas
                                               9th Floor
                                               New York, New York 10036
                                               Tel. (212) 584-7806
                                               rosanne@felicellolaw.com

                                               CKR Law LLP
                                               Michael James Maloney
                                               1330 Avenue of the Americas, 14th Fl
                                               New York, NY 10019
                                               Tel. (212) 259-7300
                                               mmaloney@ckrlaw.com

                                               *Attorneys for Plaintiffs Denise Shull and The*
                                               *ReThink Group, LLC*