UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
-------------------------------------------------------- x

DENISE K. SHULL and THE RETHINK
GROUP, INC.,

                Plaintiffs,

        v.

ANDREW ROSS SORKIN, BRIAN
KOPPELMAN, DAVID LEVIEN, DAVID
NEVINS, TBTF PRODUCTIONS INC.,
SHOWTIME NETWORKS INC., and CBS
CORPORATION,

                Defendants.

-------------------------------------------------------- x

Civil No.: 18 Civ. 12400 (GBD)

**ORAL ARGUMENT REQUESTED**

## <u>DEFENDANTS' OPPOSITION TO PLAINTIFFS' POST-JUDGMENT MOTION</u>

Elizabeth A. McNamara
Rachel F. Strom
Jamie S. Raghu
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone:  (212) 489-8230
Facsimile:  (212) 489-8340

*Attorneys for Defendants Andrew Ross Sorkin,*
*Brian Koppelman, David Levien, David Nevins,*
*TBTF Productions Inc., Showtime Networks Inc.,*
*and CBS Corporation*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 3

A.     Plaintiffs' Original Complaint ................................................................................ 3

B.     The Motion to Dismiss and the Two-Hour Oral Argument................................... 4

C.     The Court Grants Defendants' Motion to Dismiss in its Entirety ...................... 6

D.     Plaintiffs Move to Amend, Alter, or Vacate the Court's Decision and Final Judgment and Request Leave to Amend the Complaint ................................... 8

ARGUMENT ............................................................................................................................ 9

I.     PLAINTIFFS' REQUEST TO RECONSIDER OR VACATE THE DISTRICT COURT'S FINAL JUDGMENT SHOULD BE DENIED ................................. 9

     A.     Strict Standards Under Rules 59(e) and 60(b) ...................................... 9

     B.     Plaintiffs' Motion Does Not Meet These Strict Standards ................... 11

II.     PLAINTIFFS' POST-JUDGMENT REQUEST FOR LEAVE TO AMEND THEIR COMPLAINT SHOULD BE DENIED ................................................ 15

     A.     Motions For Leave *After* Entry of Final Judgment Face A Higher Bar............... 15

     B.     Plaintiffs' Proposed Amended Complaint is Futile ............................. 16

          1.     This Court Already Determined that the Works are Not Substantially Similar ................................................................... 17

          2.     Plaintiffs' Proposed Amendments Still Fail to Plausibly Allege An Implied in Fact Contract ....................................... 18

          3.     Plaintiffs' Proposed Claim Under the Lanham Act § 43(a)(1)(A) is Barred by the First Amendment............................... 20

III.     PLAINTIFFS' MISAPPROPRIATION CLAIM WAS ALREADY DISMISSED ........ 25

CONCLUSION........................................................................................................................ 25

4832-3894-2894v.9 3940173-000113

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
  106 F.3d 11 (2d Cir. 1997)........................................................................................16

*Betty, Inc. v. PepsiCo, Inc.*,
  283 F. Supp. 3d 154 (S.D.N.Y. 2017).........................................................8, 19, 20

*Bild v. Wieder*,
  No. 09CV5576ARRVVP, 2013 WL 12368704 (E.D.N.Y. Aug. 12, 2013) ............10

*Brown v. Elec. Arts, Inc.*,
  724 F.3d 1235 (9th Cir. 2013) ...............................................................................21

*Burck v. Mars, Inc.*,
  571 F. Supp. 2d 446 (S.D.N.Y. 2008).....................................................................24

*Cordero v. Astrue*,
  574 F. Supp. 2d 373 (S.D.N.Y. 2008).................................................................1, 2, 9

*Dudley ex rel. Estate of Patton v. Penn-America Ins. Co.*,
  313 F.3d 662 (2d Cir. 2002)....................................................................................10

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
  547 F.3d 1095 (9th Cir. 2008) ................................................................................22

*ETW Corp. v. Jireh Pub., Inc.*,
  332 F.3d 915 (6th Cir. 2003) ..................................................................................24

*FameFlyNet, Inc. v. Shoshanna Collection, LLC*,
  No. 16 CIV. 7645 (RWS), 2018 WL 671267 (S.D.N.Y. Feb. 1, 2018)....................9

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
  778 F.3d 1059 (9th Cir. 2015) .........................................................................24, 25

*In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*,
  No. 08 CIV. 4772 (LTS), 2011 WL 13266912 (S.D.N.Y. Feb. 8, 2011) .............1, 9

*In re Molycorp, Inc. Sec. Litig.*,
  No. 13 Civ. 5697 (PAC), 2016 WL 3002424 (S.D.N.Y. May 23, 2016) ...............9, 10, 11, 16

*Indergit v. Rite Aid Corp.*,
  52 F. Supp. 3d 522 (S.D.N.Y. 2014)...................................................................10, 13

i

*Janese v. Fay*,
  692 F.3d 221 (2d Cir. 2012)...............................................................................16

*Johnson v. ThyssenKrupp Elevator Corp.*,
  No. 19CV03009AMDRLM, 2019 WL 6217267 (E.D.N.Y. Nov. 15, 2019) ...........................9

*Kaplan v. California*,
  413 U.S. 115 ...........................................................................................................21

*Louis Vuitton Malletier S.A. v. Warner Bros. Entertainment Inc.*,
  868 F. Supp. 2d 172 (S.D.N.Y. 2012)...............................................................22, 23

*McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*,
  293 F. Supp. 3d 394 (S.D.N.Y. 2018)................................................................11

*Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*,
  930 F.2d 240 (2d Cir. 1991)...............................................................................10

*Nelson v. Grisham*,
  942 F. Supp. 649 (D.C. Cir. 1997) ....................................................................12

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
  602 F.3d 57 (2d Cir. 2010).................................................................................12

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*,
  413 U.S. 376 (1973)...........................................................................................21

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989)............................................................... *passim*

*Sahni v. Staff Attorneys Ass'n*,
  No. 14-CV-9873 (NSR), 2018 WL 654467 (S.D.N.Y. 2018) ..........................10, 16

*Sheldon Abend Revocable Trust v. Spielberg*,
  748 F. Supp. 2d 200 (S.D.N.Y. 2010)...............................................................18

*Shull v. TBTF Prods. Inc.*,
  No. 18 CIV. 12400 (GBD), 2019 WL 5287923 (S.D.N.Y. Oct. 4, 2019) ...................... *passim*

*Silas v. Home Box Office*,
  201 F. Supp. 3d 1158 (C.D. Cal. 2016), *aff'd*, 713 F. App'x 626 (9th Cir.
  2018) ....................................................................................................................18

*Smith v. Hogan*,
  794 F.3d 249 (2d Cir. 2015)...............................................................................16

*State Trading Corp. of India v. Assuranceforeningen Skuld*,
  921 F.2d 409 (2d Cir. 1990)...............................................................................15

ii

*Twin Peaks Prods, Inc. v. Publ'ns Int'l Ltd.*,
    996 F.2d 1366 (2d Cir. 1993).................................................................23

*U.S. v. Bari*,
    599 F.3d 176 (2d Cir. 2010)..................................................................13

*Vacchi v. E\*TRADE Fin. Corp.*,
    No. 19CV3505 (DLC), 2019 WL 4392794 (S.D.N.Y. Sept. 13, 2019)...................................21

*Vox Amplification Ltd. v. Meussdorffer*,
    No. 13 Civ. 4922 (ADS) (GRB), 2014 WL 558866 (E.D.N.Y. Feb. 11, 2014),
    *report and recommendation adopted,* 50 F.Supp.3d 355 (E.D.N.Y.2014)............................13

*Walker v. Time Life Films, Inc.*,
    615 F. Supp. 430 (S.D.N.Y. 1985), *aff'd.,* 784 F.2d 44 (2d Cir. 1986) ............................12, 18

*White v. Samsung Elecs. Am., Inc.*,
    971 F.2d 1395 (9th Cir. 1992), *as amended* (Aug. 19, 1992)................................24

*Williams v. Citigroup Inc.*,
    659 F.3d 208 (2d Cir. 2011)...................................................2, 10, 14, 15

*Zacchini v. Scripps–Howard Broadcasting Co.*,
    433 U.S. 562 (1977)..........................................................................21

**Statutes**

N.Y. Civ. Rights L. § 50 ...........................................................................9, 20

N.Y. Civ. Rights L. § 51 ...........................................................................9, 20

15 U.S.C. §§ 1051 *et seq.* (" Lanham Act") ......................................................20, 21

**Other Authorities**

Fed. R. Civ. P. § 15(a)(2)..........................................................................15

Fed. R. Civ. P. § 59(e) ....................................................................... *passim*

Fed. R. Civ. P. § 60(b) ....................................................................... *passim*

Defendants Andrew Ross Sorkin, Brian Koppelman, David Levien, David Nevins, TBTF Productions Inc., Showtime Networks Inc., and CBS Corporation (collectively, "Defendants") submit this memorandum of law in opposition to Plaintiffs Denise Shull ("Shull") and The Rethink Groups' (collectively, "Plaintiffs") motion to (i) amend, alter, or vacate the Court's October 3, 2019 decision and October 7, 2019 entry of final judgment in favor of Defendants; (ii) request leave to file an amended complaint post-judgment, and (iii) remand Plaintiffs' misappropriation claim to state court (collectively, the "Post-Judgment Motion").

## PRELIMINARY STATEMENT

Based on full briefing, a two-hour long oral argument, and an independent and comprehensive review of the record, this Court issued a 34-page decision that granted Defendants' motion to dismiss Plaintiffs' Complaint in its entirety (the "Decision"). *Shull v. TBTF Prods. Inc.*, No. 18 CIV. 12400 (GBD), 2019 WL 5287923 (S.D.N.Y. Oct. 4, 2019) ("Dec."). In its Decision, the Court painstakingly compared Defendants' television series, *Billions*, and Plaintiffs' book, *Market Mind Games*, and addressed each and every alleged similarity that Plaintiffs put forward. In the end, the Court found no substantial similarity between the works because, among other reasons, the two characters at issue – Denise Shull and Wendy Rhoades – do not resemble each other "in the slightest." Dec. at *11. With equal thoroughness, the Court also dismissed Plaintiffs' tag-along claims as either preempted by the Copyright Act or because they failed as a matter of law.

Plaintiffs now seek a second bite at the apple and request that the Court alter, amend, or vacate its final decision pursuant to Federal Rules of Civil Procedure 59(e) and 60(b). Yet, as Plaintiffs also acknowledge (Br. at 7), this is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Cordero v. Astrue*, 574

1

F. Supp. 2d 373, 380 (S.D.N.Y. 2008). Such motions "are held to a strict standard" and "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court" – or "to correct a clear error of law or to prevent manifest injustice." *In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, No. 08 CIV. 4772 (LTS), 2011 WL 13266912, at *1–2 (S.D.N.Y. Feb. 8, 2011).

Plaintiffs do not even attempt to meet this high bar. They fail to cite a single controlling authority or identify any alleged evidence that this Court overlooked in reaching its Decision. Rather, Plaintiffs invoke only conclusory contentions that either ignore this Court's reasoning or outright misrepresent the record. At bottom, Plaintiffs do nothing more than transparently seek to re-litigate the very same arguments that this Court already considered and rejected. As a result, Plaintiffs fail to demonstrate the "extraordinary circumstances" necessary to vacate this Court's well-reasoned Decision and the motion should be denied.

Having no support for vacating this Court's Decision, Plaintiffs fall back on seeking leave to file an amended complaint. However, leave to amend *after* a final judgment has been issued, as here, is scrutinized more carefully and is properly "tempered by considerations of finality." *Williams v. Citigroup Inc.,* 659 F.3d 208, 212-13 (2d Cir. 2011). And under any analysis, Plaintiffs' proposed amendment is hopelessly futile. Plaintiffs' copyright claims fail because substantial similarity is determined by a review of the actual works, not a plaintiff's characterization of them, so no amount of re-pleading can change this Court's conclusion that the works (including the Shull and Wendy characters) are entirely different. Plaintiffs' restated implied contract claim fails because they still do not allege mutual agreement to any specific terms, or as Plaintiffs' own allegations admit: "Ms. Shull understood that the initial phone

conference and in-person meeting was the beginning of the relationship and terms would be negotiated subsequently…"  Compl ¶ 39; AC ¶ 54.  And, finally, Plaintiffs' attempt to add a Lanham Act claim fails because the claim turns on the actual use of Shull's persona in a way that falsely implies she endorses *Billions*.  Yet, this Court has already determined that the Wendy and Shull characters are not remotely similar beyond their common profession and gender.  More fundamentally, the Second Circuit and countless other decisions have squarely held that, absent circumstances not present here, the First Amendment bars the application of the Lanham Act to an expressive work such as *Billions*.

Like all plaintiffs who have their complaints dismissed, Plaintiffs do not agree with this Court's Decision.  But, the remedy is not re-litigating the same arguments and issues again. Plaintiffs' motion should be denied.

## FACTUAL BACKGROUND[1]

### A.    Plaintiffs' Original Complaint

Plaintiffs' original Complaint claimed that Defendants' television series *Billions* is an "unauthorized" use and "derivative work" of Plaintiffs' book *Market Mind Games*, based on the purported similarities arising out of the inclusion of a character that works as an in-house performance coach at a hedge fund and the alleged use of Shull's "unique" approach to the psychology of trading in financial markets.  Compl. ¶¶ 2, 25, 42-45.  Plaintiffs also brought a claim against all Defendants for implied in fact contract, arguing that the parties agreed that they would eventually negotiate a contract for Shull to consult on the series.[2]

---

[1] The Court's familiarity with the facts at issue is presumed.  For convenience, relevant facts for this motion are discussed briefly below.  The Court is respectfully directed to the Defendants' motion to dismiss (Dkt. No. 57) for a full recitation of the facts.

[2] Plaintiffs also brought six additional claims, which they do not contest were correctly dismissed, as well as one claim for misappropriation, which they now ask this Court to remand to state court.

**B.      The Motion to Dismiss and the Two-Hour Oral Argument**

Defendants moved to dismiss the Complaint, arguing that Plaintiffs' copyright

infringement claims fail as a matter of law because the works are not substantially similar and

the state law claims were either preempted by the Copyright Act, or in the alternative, failed to

state a claim.  Dkt. No. 57 ("MTD").  Plaintiffs opposed the motion but in their opposition never

sought leave to amend the Complaint.  Dkt. No. 61.

On April 18, 2019, after briefing was complete, this Court held extensive oral argument

on the motion, devoting around two hours to the evidence.  Dkt. No. 66.  During argument, in

support of their copyright claims, Plaintiffs' counsel had a full opportunity to detail each of the

ways counsel believed the Shull and Rhoades characters in *Market Mind Games* and *Billions*

were substantially similar.  *See, e.g.,* Tr. at 35:4-39:18.  Plaintiffs' counsel argued that Shull's

character in *Market Mind Games*

> is not merely a stick figure, this character figure is not a stock character; it is
> someone who does have specific traits, including the traits in how she conducts her
> business.  She gives seminars, as Wendy does on *Billions*.  She has one-on-one
> sessions with the characters, as Wendy does on *Billions*.  There are similarities not
> only in how they do their work, but what they say when they are doing their work
> -- the themes, the eating, drinking, sleeping, the paying attention to the alpha, to
> getting into the mind of these hedge fund traders.

*Id.* at 35:7-17.  *See also id.* at 25:23-18.  Plaintiffs' counsel then went over – in great detail –

each of the three scenes she believed were similar in the works, scenes that she argued

highlighted how Wendy and Denise teach traders to listen to the "quiet voice" inside.  *See id.* at

26:22-31:21 (discussing scene in *Billions* Season 1 Episode 11 where Wendy counsels Axe on a

bad trade after the death of their colleague); *id.* at 40:16-45:14 (discussing scene in *Billions*

Season 1 Episode 1 where Wendy has a one-on-one counseling session with a hedge fund trader,

Danzig, and asks about his physical health, eating, sleeping, and exercising, asks him where the

"alpha" is, and tells him to "cut bait" on his losing stocks); *id.* at 46:23-49:5 (discussing scene in

4

*Billions* Season 3, Episode 6 where Wendy and Taylor discuss listening to your instinct).[3]  At no

point, did Plaintiffs' counsel identify *any* actual expression that was copied, beyond the abstract

similarity that each character was a female performance coach at a hedge fund counseling

traders.

      With regard to their implied contract claim, the Court repeatedly asked Plaintiffs' counsel

to explain where in the Complaint it is alleged that the parties agreed that Shull would be paid for

her in-person meeting with the writers or any promotion for *Billions*.  The colloquy ended as

follows:  "Q:  But they never entered into an agreement involving Ms. Shull in promoting

*Billions*?  A:  **Right.  But at the time she believed they would.**  In paragraph 39, she understood

that the initial phone conference was the beginning of the relationship."  *See id.* at 58:9 – 61:10

(emphasis added).  Shull was never engaged to and never did promote *Billions*.

      Consistent with their opposition to the motion to dismiss, at oral argument Plaintiffs did

not request leave amend their Complaint as is suggested on this motion.  Br. at 7; 9 n.1.

Instead, when pressed by the Court concerning the lack of substantive similarities between the

works, Plaintiffs' counsel stated that she would be "happy to amend the complaint to add

[additional details] if [the Court] think[s] that would be helpful" (Tr. 62:13-15), or, "I'm not sure

if it's stated clearly in the complaint as we have stated it in our papers, which we would offer the

Court as an amendment to the complaint" (*id.* 67:7-10), and, finally, "I would be happy to amend

it *if you think it's necessary, but I think we have a claim*" (*id.* 76:19-20) (emphasis added).

---

[3] In the original Complaint, Plaintiffs specifically identified two scenes from *Billions* as purported examples of
similarity between the works.  *See* Compl. ¶ 42 (referring to a scene in the pilot where Wendy has a one-on-one
counseling session with a trader where she allegedly "focus[ed] on the physical well-being of the trader client (*i.e.*
eat, sleep, exercise) and tuning into the alpha voice"); ¶ 44 (*Billions* scene from Season 1 Episode 11 entitled
"Magical Thinking" where Wendy counsels Axe through a bad trade).  In Plaintiffs' opposition to Defendants'
motion to dismiss, Plaintiffs expanded and added to that list, identifying a total of five separate scenes from *Billions*
– the pilot, Season 1, Episodes 1, 11, Season 3 Episodes 1, 2, 3, 6 – which they claimed were evidence of substantial
similarity.  Felicello Decl. ISO of Pls' Opp'n, Ex. 3.

Plaintiffs' first request to amend their Complaint occurred only after judgment had been entered.

**C.    The Court Grants Defendants' Motion to Dismiss in its Entirety**

On October 3, 2019, the Court issued its 34-page Decision granting Defendants' motion to dismiss in its entirety. Establishing that the Court independently reviewed the two works at issue, the Court extensively described each work – a summary that included many details from the works that were not highlighted by either party.[4] The Court then analyzed the characters of Wendy and Denise, their interactions with the other characters in their respective works, as well as each scene from *Billions* identified by Plaintiffs as allegedly infringing Shull's character or *Market Mind Games. See e.g.* Dec. at *10-11 (analyzing Wendy and Shull's relationships with Axe and Michael, respectively); *id* at *11-12 (analyzing the purported infringing scenes in *Billions* where Wendy counsels a hedge fund trader and mentions "alpha," "physical well-being," and "eat[ing], sleep[ing], and exercise[ing]"); *id.* at *12-13 (analyzing purported infringing scenes in *Billions* where Wendy counsels Axe on a bad trading decision).

After reviewing the works, the Court explained that under any copyright infringement test – discerning ordinary observer test, qualitative/quantitative test, or fragmented literal similarity test – "these works do not seem to resemble each other in the least," concluding "*Market Mind Games* and *Billions* differ greatly in 'total concept and feel, theme, characters, plot, sequence, pace, and setting.'" Dec. at *9. As expressly found by the Court:

> the issue does not lie in the fact that one is a book and one is a
> television show, but the fact that Plaintiffs' work is an academic

---

[4] *See, e.g.* Dec. at *7 (explaining that in *Market Mind Games* "to further explain the *eC*, Shull details a December 2010 report, released after 'the Financial Crisis Inquiry Commission' reportedly broke down: ….. *Id.* at xiv…Shull uses this example to demonstrate that behind partisanship and political circuses are opposing parties holding dissimilar points of view."); *id.* ("in illustrating her ideas [in *Market Mind Games*], Shull draws on other ideas that are historical in nature, and also references other literary works" referencing Shull's use of Peter Bernstein's market book, *Against the Gods: The Remarkable Story of Risk*, Benoît Mandelbrot's books on fractal geometry, the neurological study of Albert Einstein's brain tissue, and Antonio Damasio's book, *Descartes' Error. See, e.g., id.* at 12, 14, 18, 28, 38, 147–67.). None of these references were included in Defendants' motion papers.

> work which interweaves fiction to better help the reader understand
> Shull's ideas, while Defendants' work is a television show, based in
> the Southern District of New York, to demonstrate the drama that
> lies in the age old trifecta of money, power, and sex.

*Id.*

Getting to the heart of Plaintiffs' copyright claims, the alleged similarity between the characters, the Court concluded that "the characters of Denise and Wendy do not resemble one another in the slightest." *Id.* at *11. It started its analysis by observing that "[a]n in-house psychiatrist may not be a 'stock character'" but, as noted in the very *Dealbook* article Plaintiffs put in evidence, the "idea" of performance coaches for traders was "not new." *Id.* at *10. Moreover, the Court found Shull's argument "precarious" that she had "exclusivity in this particular idea" because it would "essentially grant Shull a monopoly on the entire subject matter of the female performance coach." *Id.* at *11. The Court reached this conclusion because Denise's identity as a character was "not developed," noting that Denise was "not given much of a persona" and the character instead was just used as a vehicle to "explain and demonstrate Shull's ideas." *Id.* Accordingly, the Court rejected Plaintiffs' claim as nothing more than "essentially argu[ing] that because Wendy is *also* a female in-house hedge fund performance coach," the Denise and Wendy characters were substantially similar. *Id.* (emphasis original).

The Court also expressly addressed – and rejected – Plaintiffs' argument that both characters are similar because they "go toe-to-toe with male hedge fund traders in advising them how to explore and apply their emotions for fun and profit." *Id.* at *10. The Court found that this "representation [of going toe-to-toe with male traders] serves to mischaracterize both Denise and Wendy" as the actual expression in each work is entirely different.[5] *Id.* at *11. Overall,

---

[5] The Court found that "Denise explains her mathematical and scientific concepts through fictionalized lectures and workshops" and her going "toe-to-toe" with Michael on his bad trade does not resemble Wendy's dealings with the "overly dominant Axe Capital employees and her own husband and overbearing father-in-law." *Id.*

because the Court could not "identify any copying, not even copying that is said to be 'fragment'", the Court dismissed Shull's copyright infringement claims with prejudice.  *Id.* at *10, *14.

As is also relevant here, the Court found that Plaintiffs' implied in fact contract claim failed too as a matter of law.  In finding Plaintiffs failed to state a claim under New York law, the Court relied on *Betty, Inc. v. PepsiCo, Inc.*, 283 F. Supp. 3d 154 (S.D.N.Y. 2017), which holds that there can be no implied in fact contract claim unless an inference could be drawn there was mutual assent to the material terms of the agreement.  Dec. at *6, *15.  The Court found that Plaintiffs' implied in fact contract claim failed because "Plaintiffs do not plead that *both* parties understood that there was an agreement."  *Id.* at *15.  The Court explained that "[i]n the complaint, in fact, Plaintiffs state that Shull herself 'understood that the initial phone conference and in-person meeting was the beginning of the relationship and terms would be negotiated subsequently in concert with marketing the series.'"  *Id.*  And this one-sided sense of agreement was reaffirmed at oral argument with the Court observing that "Plaintiffs' counsel's own explanation was not indicative of any contract" and quoted Plaintiffs' counsel's "uncertain" response of "yes and no" to the Court's question of whether there was "some agreement that Shull would be compensated for her services" as evidence "that there were no manifestations" or "inferences" of mutual assent, a required element of any contract.  *Id.* at *15.

**D.     Plaintiffs Move to Amend, Alter, or Vacate the Court's Decision and Final Judgment and Request Leave to Amend the Complaint**

On November 6, 2019, Plaintiffs moved this Court pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) to amend, alter, or vacate the Court's decision dismissing the Complaint in its entirety.  In the alternative, Plaintiffs requested leave to amend the Complaint pursuant to Rule 15 in order to "introduce[] additional allegations of fact relating to the currently

8

asserted copyright claims" and implied contract claim.  At the same time, Plaintiffs' proposed amended complaint would replace the dismissed right of publicity claim under New York Civil Rights Law Sections 50 and 51 with a Lanham Act claim for false endorsement.  Br. at 1, 9.

## ARGUMENT

## I.   PLAINTIFFS' REQUEST TO RECONSIDER OR VACATE THE DISTRICT COURT'S FINAL JUDGMENT SHOULD BE DENIED

### A.   Strict Standards Under Rules 59(e) and 60(b)

A motion to alter or amend a final decision pursuant to Federal Rule of Civil Procedure 59(e) is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  *Cordero*, 574 F. Supp. 2d at 380; *In re Molycorp, Inc. Sec. Litig.*, No. 13 Civ. 5697 (PAC), 2016 WL 3002424, at *2 n.3 (S.D.N.Y. May 23, 2016). Such motions are held to a "strict" standard and "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked" and "to correct a clear error of law or to prevent manifest injustice"—"matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *In re Am. Int'l Grp., Inc.*, 2011 WL 13266912, at *1–2; *Johnson v. ThyssenKrupp Elevator Corp.*, No. 19 Civ. 03009 (AMD)(RLM), 2019 WL 6217267, at *1 (E.D.N.Y. Nov. 15, 2019).  "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple."  *FameFlyNet, Inc. v. Shoshanna Collection*, *LLC,* No. 16 CIV. 7645 (RWS), 2018 WL 671267, at *1 (S.D.N.Y. Feb. 1, 2018).

Where, as here, the moving party merely presents the same arguments previously presented and identifies no overlooked controlling law or facts that may reasonably have led to a different result, the motion fails.  *See FameFlyNet, Inc*, 2018 WL 671267, at *2 (denying Rule 59(e) motion in copyright infringement action where movant "had not brought any new factual

matters or legal points to the Court's attention"); *see also Indergit v. Rite Aid Corp.*, 52 F. Supp. 3d 522, 523-24 (S.D.N.Y. 2014) (denying motion for reconsideration where defendants had already argued the issue, explaining that "[t]he fact that the Court did not specifically address this argument in its Order does not mean that it was not considered and rejected"); *see also Sahni v. Staff Attorneys Ass'n*, No. 14-CV-9873 (NSR), 2018 WL 654467, at *5 (S.D.N.Y. 2018) (denying Rule 60 motion where the court's previous "exhausti[ve] analysis" made clear that "no such substantive mistake occurred in this action").

The standard governing a motion to vacate under Rule 60(b) is "similarly exacting" and permits a district court to vacate its final judgment on the basis of, among other things, "mistake, inadvertence, surprise, or excusable neglect."  Such relief "should be applied only in exceptional circumstances."  *In re Molycorp*, 2016 WL 3002424, at *2 n.3; *Sahni*, 2018 WL 654467, at *5 (Rule 60 is "available for a district court to correct legal errors").  Although substantive differences do exist between Rules 59(e) and Rule 60(b), where a party requests the same relief – here to be relieved from the judgment – it makes "no practical difference" whether the Court analyzes the motions under either Rule 59 or 60's strict standards and both are within "the sound discretion of the district judge".  *Dudley ex rel. Estate of Patton v. Penn-America Ins. Co.*, 313 F.3d 662, 666 (2d Cir. 2002); *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 244 (2d Cir. 1991); *Bild v. Wieder*, No. 09CV5576ARRVVP, 2013 WL 12368704, at *2 (E.D.N.Y. Aug. 12, 2013).  A "party seeking to file an amended complaint post-judgment must first have the judgment vacated or set aside pursuant to [Rules] 59(e) or 60(b)."  *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011); *Nat'l Petrochem.,* 930 F.2d at 245 (without "valid basis to vacate the previously entered judgment, it would be contradictory to entertain a

motion to amend the complaint.").[6]

### B.    Plaintiffs' Motion Does Not Meet These Strict Standards

This is not a motion that warrants such an "extraordinary" remedy.  Plaintiffs do not allege that the Court overlooked any "controlling decisions" or that it failed to properly apply the controlling authorities.  Instead, Plaintiffs assert that the Court purportedly made four "clear errors of law" but none withstand scrutiny.  In the end, it is readily apparent that the motion is nothing more than a transparent attempt to re-litigate the Court's Decision dismissing Plaintiffs' claims.

*First,* Plaintiffs argue that the Court "incorrectly applied the law of copyright" by "not considering the sequence of events of *Market Mind Games* and the interplay of the characters as compared to particular events in *Billions.*"  Br. 1, 6-7.  Plaintiffs argue that the Court "improperly relied on *Defendants'* summary of the facts . . . instead of adopting" the allegations in the Complaint and improperly found that an in-house female performance coach was a "stock character."  *Id.* at 5.  Tellingly, Plaintiffs make no attempt to specify what sequence of events or interplay of the characters the Court purportedly failed to consider.  This failure is not surprising since a simple reading of the Decision reveals that the Court painstakingly detailed the plots of each work and the expression in the Wendy and Denise characters, including their relationship with the other characters in the works.  *See e.g.* Dec. at *10-13, *supra* 6-7.  Only then did the Court find that the works and characters do not resemble each other "in the least" under *three* separate tests.  Dec. at *9.

---

[6] Plaintiffs also move under Local Rule 6.3 for reconsideration.  Beyond failing to mention the rule in their brief, any motion under Local Rule 6.3 is untimely and fails for the same reason as their motion under Rules 59 and 60. *See McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 397 (S.D.N.Y. 2018) (motions under Local Rule 6.3 must be made "within fourteen (14) days after the entry of the court's determination of the original motion . . . . untimeliness of a motion for reconsideration is reason enough to deny the motion."); *In re Molycorp, Inc. Sec. Litig.*, 2016 WL 3002424, at *2 (standard under Rule 59(e) is identical to Local Rule 6.3).

Plaintiffs' argument that the Court incorrectly applied copyright law by failing to "adopt[]" Plaintiffs' description of the works in the Complaint, and "improperly rel[ying] on *Defendants'* summary of the facts" evidences a fundamental misunderstanding of copyright law. Br. at 5.  As the Second Circuit explained in *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010), a court may consider substantial similarity between works themselves on a motion to dismiss "because the court has before it all that is necessary in order to make such evaluation."   *See* MTD at 12; *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 51 (2d Cir. 1985) ("[T]he works themselves, not descriptions or impressions of them, are the real test for claims of infringement."); *Nelson v. Grisham*, 942 F. Supp. 649, 652 (D.C. Cir. 1997) ("in any case involving substantial similarity, the actual texts are the relevant evidence").  Indeed, Plaintiffs conceded as much at oral argument.  *See* Tr. at 49:9-14 ("THE COURT: So I need to do that book-to-DVD comparison.  And you say that an analysis of those episodes of *Billions* will demonstrate a similarity of themes and concepts . . . MS. FELICELLO:  Yes, your Honor").[7]

Far from adopting Defendants' view of the facts, the Court's decision makes it plain that the Court conducted its own independent review of the works – citing multiple scenes that were not highlighted by either party's briefing.[8]  Finally, Plaintiffs claim that the Court erroneously found a female hedge fund psychiatrist to be a "stock character," is just wrong.  The Decision actually found "an in-house psychiatrist may *not* be a 'stock character'" but that "the *idea* of an in-house psychiatrist" was not novel.  Dec. at *10-11 (emphasis added).  In short, Plaintiffs identify no error in the Court's application of copyright law.

---

[7] To support an argument that the Complaint's allegations control, Plaintiffs rely on an entirely inapposite case interpreting the Sherman Act, not a copyright case.  Br. at 5 (citing *LaFaro v. New York cardiothoracic Grp., PLLC*, 570 F3d 471 (2d Cir. 2009)).

[8] In fact, while the Court cited Defendants' memorandum of law 12 times in the Decision, it cited Plaintiffs' own memorandum 13 times and their Complaint over 50 times.

*Second,* Plaintiffs claim "the Court erred" by "considering facts outside the complaint" and undertaking a "quick internet search" to reveal that the use of in-house performance coaches is now common on Wall Street.  Br. at 1, 5.  This argument ignores that the Court's "internet search" did nothing more than confirm the very evidence Plaintiffs offered, specifically the *Dealbook* article attached to Plaintiffs' Complaint that established that "the idea [of a performance coach for traders] is not new."  Dec. at *10.  Further, even assuming Wall Street's use of performance coaches was newly revealed by the Court's internet search – and it plainly was not – the Court is entirely within its discretion to take judicial notice of information online to "confirm [its] own intuition."  *U.S. v. Bari*, 599 F.3d 176, 180 (2d Cir. 2010) (upholding judicial notice where "a judge need only take a few moments to confirm his intuition by conducting a basic Internet search").  *See also Vox Amplification Ltd. v. Meussdorffer*, No. 13 Civ. 4922 (ADS) (GRB), 2014 WL 558866, at *8 (E.D.N.Y. Feb. 11, 2014), *report and recommendation adopted*, 50 F.Supp.3d 355 (E.D.N.Y.2014) (taking judicial notice of the fact that "there are scores of stringed instruments featuring teardrop bodies" based on the court's "independent web searches").

*Next,* Plaintiffs assert that the Court "incorrectly applied the law of . . .  implied contract" by quoting only a portion of Plaintiffs' counsel's response to questioning at oral argument.  Br. at 6.  Notably, Plaintiffs do not (because they cannot) argue that the Court improperly interpreted and applied the controlling case law on implied contract.  And just because the Court did not quote the portion of the oral argument that Plaintiffs would now like to highlight does not mean it was not considered.  *See Indergit*, 52 F. Supp. 3d at 524  (denying plaintiffs' Rule 59 motion arguing the court overlooked various facts because "[t]he fact that the Court did not specifically address [one of plaintiffs'] argument[s] in its Order does not mean that it was not considered and

13

rejected.").

In fact, the Court was generous in its description of Plaintiffs' response to the Court's repeated question of whether the Complaint actually alleged that there was a mutual agreement between the parties. The Decision observed that Plaintiffs' counsel had some "uncertainty" when directly asked whether there was "some agreement that Shull would be compensated for her services" (responding "yes and no"). Dec. at *15. Yet, this "uncertainty" was resolved later in the transcript when Plaintiffs conceded that they never entered into an agreement involving Shull promoting *Billions* "but at the time [Shull] *believed* they would." Tr. 61:6-9. The simple fact is that whether one considers the Complaint or Plaintiffs' admissions at oral argument, Plaintiffs never alleged any facts that could support the conclusion that *Defendants* understood there was an agreement in place. Indeed, as the Court's Decision makes clear, Plaintiffs plead the exact opposite. Plaintiffs allege "Shull herself understood that the initial phone conference and in-person meeting was the beginning of the relationship and *terms would be negotiated subsequently* in concert with marketing the series." Dec. at *15 (citing Compl. ¶ 39; Opp'n at 9) (emphasis added). Thus, there is no "error" on this point either.

*Finally,* Plaintiffs assert that the Court erred by not providing Plaintiffs leave to amend their Complaint. But, there can be no error if leave was never sought. As detailed above, Plaintiffs never requested this relief until *after* judgment was entered. *Supra* at 5. When faced with a similar belated request for a do-over, the Second Circuit soundly rejected this tactic as "frivolous." *See Williams*, 659 F.3d at 212 ("the contention that the District Court abused its discretion in not permitting an amendment that was never requested [is] frivolous."). And if Plaintiffs *had* asked for leave to amend their Complaint, Plaintiffs would have faced the same futility roadblock that dictates why their belated request fails. *See infra* at 16-25.

14

In sum, Plaintiffs' Post-Judgment Motion relies on purported errors that do not exist. Their motion amounts to nothing more than an attempt to re-litigate the Court's Decision dismissing all claims and, as such, the motion does not meet the strict standards set forth in Rules 59(e) and 60(b).  The motion should be denied.

## II.   PLAINTIFFS' POST-JUDGMENT REQUEST FOR LEAVE TO AMEND THEIR COMPLAINT SHOULD BE DENIED

### A.   Motions For Leave *After* Entry of Final Judgment Face A Higher Bar

In the ordinary course, leave to amend under Federal Rule of Civil Procedure 15(a)(2) should be freely given by a court "when justice so requires."  However, where, as here, "a party does not seek leave to file an amended complaint until after judgment is entered, Rule 15's liberality must be tempered by considerations of finality."  *Williams*, 659 F.3d at 212–13.  "[T]o hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation."  *Id.* at 213 (quoting *Nat'l Petrochem.*, 930 F.2d at 245); *see also State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) ("When the moving party has had an opportunity to assert the amendment earlier, but has waited until after judgment before requesting leave, a court may exercise its discretion more exactingly.").

While the Second Circuit in *Williams* noted in *dicta* that "it might be appropriate in *a proper case* to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment," as conceded by Plaintiffs (Br. at 8), the court did not provide an example of what would constitute such a "proper case."  *Williams*, 659 F.3d at 213 (emphasis added).  Without such guidance, courts post-*Williams* generally consider whether the new allegations would alter the court's prior decision or would instead be considered futile in conjunction with whether plaintiffs have demonstrated that they are entitled to relief under Rules

4832-3894-2894v.9 3940173-000113

59 or 60.[9]  *See, e.g., Smith v. Hogan*, 794 F.3d 249, 256 (2d Cir. 2015) (plaintiff "was not entitled to replead at this stage of the case" because he had not demonstrated that he was entitled to reconsideration); *Janese v. Fay*, 692 F.3d 221, 229 (2d Cir. 2012) ("District Court properly denied the motion to amend following its denial of the motion for reconsideration."); *Sahni*, 2018 WL 654467, at *4–9 (first considering whether plaintiff met the standard for relief under Rule 60 before considering whether amendment would be futile); *In re Molycorp, Inc. Sec. Litig.*, 2016 WL 3002424, at *3 (finding that "Plaintiffs do not articulate a valid ground for reconsideration," before concluding that the court "declines to exercise its discretion to grant leave to amend").

Because Plaintiffs have not satisfied the strict standards of Rules 59(e) or 60(b) and their proposed amendment is futile, their post-judgment motion should be denied.

### B.      Plaintiffs' Proposed Amended Complaint is Futile

Plaintiffs' attempt to buttress their copyright claims with "additional allegations" fails for the simple reason that the allegations are anything but new and are ultimately irrelevant.  *See infra.*  Indeed, Plaintiffs' additional allegations of similarity were already expressly addressed in the motion to dismiss briefing and at oral argument.  For example, allegations about Wendy's focus on "physical well-being" and "alpha voice" during a session with an Axe Capital trader were not only asserted in the original Complaint and discussed at length in the parties' briefing, but the Court and Plaintiffs' counsel had an entire discussion at oral argument about the scene that Plaintiffs now seek leave to include.  *Compare* Tr. 40-45:18; *with* AC ¶¶ 61; 62.[10]  Likewise,

---

[9] In the ordinary course where leave to amend is requested prior to an entry of final judgment, or even on a post-judgment request, leave to amend may be properly denied where the proposed amendment "could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)" and thus is considered futile.  *Sahni*, 2018 WL 654467, at *7; *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 106 F.3d 11, 18 (2d Cir. 1997) ("It is well established that "[l]eave to amend need not be granted . . . where the proposed amendment . . . would be futile").

[10] *Compare* Compl. ¶ 42 ("in the pilot Dr. Rhoades makes multiple statements and observations that are nearly identical to those made by Ms. Shull in *Market Mind Games*, including focusing on the physical well-being of the trader client (*i.e.* eat, sleep, exercise) and turning into the alpha voice.") *with* AC ¶ 61 ("the very first coaching session shown in the pilot of "*Billions*," Dr. Rhoades inquires "are you eating, sleeping, and exercising?" In *Market*

Plaintiffs' proposed amendments around Shull's "unique" approach to trading and investment philosophy were also already raised and rejected by the Court.  *See* MTD at 15; Tr. at 26:8-15.[11]

Beyond doing nothing more than expanding allegations of substantial similarity that were already reviewed and found by the Court to not support a copyright claim, Plaintiffs attempt to salvage their implied in fact contract claim by adding boilerplate allegations.  But the claim remains doomed in the face of Plaintiffs' concession that any terms of an agreement would be negotiated later and it was Shull's belief, not Defendants' agreement, that she would be paid.  Finally, Plaintiffs seek to add a Lanham Act claim that would violate the First Amendment and fail in the face of this Court's unequivocal finding that the Wendy and Shull characters are not similar.  In short, the proposed Amended Complaint is completely futile.

### 1.     This Court Already Determined that the Works are Not Substantially Similar

As conceded by Plaintiffs, their proposed amended allegations do nothing more than provide "more examples of the [alleged] similarities between the characters, the specific methods used by 'Wendy' and 'Denise' and how they are unique[.]"  Br. at 10.  But, Plaintiffs' attempt to be more expansive in identifying how the works are similar is a wasted exercise.  Substantial similarity is determined by a review of the actual works, not a plaintiff's characterization of the works.  *Walker*, 784 F.2d at 51 ("the works themselves, not descriptions or impressions of them,

---

*Mind Games*, Ms. Shull prioritizes these physical activities in the same order.") *and* AC ¶ 62 ("Dr. Rhoades' novel advice to 'Danzig' in the pilot episode of "Billions" to listen to the quiet voice "telling you where the alpha is," she is mirroring Ms. Shull's character's explanation that "[j]udgment calls must be made to fill in the gap where the numbers leave off and 'alpha' – or exceptional performance – begins." . . . . And the "quiet voice" referenced by Dr. Rhoades is the "judgment call" or "intuition" extensively and originally explicated in *Market Mind Games*."); *see also* Defs. Br. at 15-16; Pls.' Opp'n at 10, 21; Felicello Decl. ISO of Pls' Opp'n, Ex. 3.

[11] *Compare* Compl. ¶ 25 (*Market Mind Games* has received critical acclaim . . . thanks to its unique perspective and approach), ¶ 26 ("Ms. Shull and her unique approach to performance coaching and trading psychology") *with* AC ¶ 21 ("Shull's coaching strategy is unique . . ."); ¶ 22 ("Shull's approach is radically different from that espoused by any other performance coach").  Plaintiffs' other proposed amendments for her copyright claims merely seek leave to include greater portions of scenes that were already included in the original Complaint, addressed in the parties' briefing, and rejected by the Court.  *Compare* Compl. ¶¶ 43-45 *with* AC ¶ 64-66; *compare* Felicello Decl. ISO of Pls' Opp'n, Ex. 3 at 9 *with* AC ¶ 68.

are the real test for claims of infringement.")  To be clear, no amount of re-pleading can change the inevitable conclusion, already reached by the Court after an independent review of the works, that *Billions* and *Market Mind Games* are entirely different.  *See Silas v. Home Box Office*, 201 F. Supp. 3d 1158, 1184 (C.D. Cal. 2016) (granting defendant's motion to dismiss with prejudice where the works "are not extrinsically similar and no amendment could possibly cure that defect in Plaintiffs' case"), *aff'd*, 713 F. App'x 626 (9th Cir. 2018).  This alone is sufficient to deny Plaintiffs' request to amend their copyright infringement claim.

If that were not enough – and it is – Plaintiffs' proposed amendments were, in fact, already addressed in the motion to dismiss briefing and at oral argument.  *See supra* at 3-6. Whether it be the alleged "uniqueness" of Shull's approach to trading and investment philosophy, or discussions of the "alpha voice," or a focus on traders' "physical well-being," the Court expressly considered – and rejected – each of these allegations as supporting a finding of substantial similarity.  Expanding on the same issues cannot and will not change that conclusion. Accordingly, Plaintiffs' request for leave to amend their complaint to add additional allegations of similarity should be denied as futile.[12]

## 2. Plaintiffs' Proposed Amendments Still Fail to Plausibly Allege An Implied in Fact Contract

Plaintiffs' amended implied in fact contract claim is likewise futile as it still fails to state a claim.  This Court granted Defendants' motion to dismiss Plaintiffs' implied in fact contract

---

[12] Plaintiffs' proposed amendments alleging that certain third parties believed that there were similarities between the actual Denise Shull (not the character in *Market Mind Games*) and the character of Wendy in *Billions* (AC ¶¶ 72) do not alter the conclusion that leave to amend the Complaint should be denied as futile.  The "[o]pinions of third parties…are [] irrelevant" to the question of substantial similarity.  *Sheldon Abend Revocable Trust v. Spielberg*, 748 F. Supp. 2d 200, 204, n.4 (S.D.N.Y. 2010) (disregarding media articles and film critics' reviews likening the allegedly infringing work to the original work); *see also Walker v. Time life Films, Inc.*, 615 F. Supp. 430, 437 (S.D.N.Y. 1985) ("a few opinions cannot enlarge the scope of statutory protection enjoyed by a copyrighted property"), *aff'd*, 784 F.2d 44 (2d Cir. 1986).

18

claim because the Court determined that Plaintiffs had not sufficiently alleged that "*both* parties had understood that there was an agreement" – a required element of any (implied or express) contract claim.  Dec. at *15.  As this Court explained, citing *Betty*, "[a] contract is not 'implied in fact where the facts are inconsistent with its existence . . . or against the intention or understanding of the parties."  *Id.* at *16.  Further, again relying on *Betty*, this Court recognized that "for a plaintiff [to] secure redress for breach of an agreement, the promise made by the defendant must be sufficiently certain and specific so that the parties intentions are ascertainable."  Dec. *6.  In *Betty* itself, the court found that an allegation that an agreement "would be negotiated" later defeats the claim.  *Betty*, 283 F. Supp. 3d at 167.

Here, the Court focused on Plaintiffs' allegation that "Shull herself understood that the initial phone conference and in-person meeting was the beginning of the relationship and *terms would be negotiated subsequently* in concert with marketing the series."  Dec. at *15 (citing (Compl. ¶ 39; Pls.' Opp'n at 9) (emphasis added)).  This same allegation appears in the proposed Amended Complaint. AC ¶ 54.

In other words, even with the benefit of a proposed amendment, Plaintiffs continue to concede (as they must) that while Shull expected the "terms [of Shull's alleged involvement] would be negotiated subsequently" to her meeting with Defendants, actual terms were never discussed nor agreed upon.  *Compare* Compl. ¶ 39 *with* AC ¶ 54; *see also* AC ¶ 43 ("Ms. Shull understood that it would be an initial meeting as part of an *expected* contractual agreement."); ¶ 49 (describing a "*potential* collaboration" with Shull); ¶ 51 (discussing "*exploring* additional opportunities") (emphasis all added).  Indeed, Plaintiffs do not – and cannot – allege that any of Defendants actually acted on her expectation – there were no further meetings, no further calls, no further negotiations.  And, as Plaintiffs admit, the actual specific terms of the agreement were

never agreed to, which is a requirement to any contract claim.

As Plaintiffs' counsel succinctly put it at the hearing, while an agreement was never reached, Shull "believed they would" reach one. Tr. 61:8-9. But, as in *Betty*, this concession defeats her claim. Regardless of whether the Court considers Plaintiffs' original Complaint or their proposed Amended Complaint, the bottom line remains the same: at best, Plaintiffs allege nothing more than a non-actionable agreement to agree. *See* MTD at 27-28. The proposed Amended Complaint is futile as it still does not state a claim for implied in fact contract.

### 3.   Plaintiffs' Proposed Claim Under the Lanham Act § 43(a)(1)(A) is Barred by the First Amendment

Plaintiffs' proposed Amended Complaint also seeks to "augment[]" allegations from their dismissed right of publicity claim under New York Civil Rights Law Sections 50 and 51 into a new cause of action – Plaintiffs' ninth – for false endorsement under the Lanham Act § 43(a)(1)(A). Br. 10-11. Recognizing the undisputed fact that *Billions* does *not* use Shull's name, physical attributes, or voice anywhere in the series – a necessary predicate for a Section 50-51 claim – Plaintiffs attempt to find comfort in the Lanham Act. But, the claim is no more viable under the Lanham Act than it was under state law.

Any Lanham Act claim based on false endorsement, as Plaintiffs now attempt to allege, turns on a necessary finding that viewers would erroneously believe that the actual Shull endorsed *Billions* because she is depicted as the Wendy character in the show. Yet, after a thorough analysis, this Court has already determined this was not the case, finding that Wendy and Denise (who is a fictionalized representation of the *actual* Denise Shull), "do not resemble one another in the slightest." Dec. at *11. Plaintiffs cannot now claim that Defendants violated the Lanham Act by falsely implying that the actual Shull somehow endorsed *Billions*. *See Vacchi v. E*TRADE Fin. Corp.*, No. 19CV3505 (DLC), 2019 WL 4392794, at *6 (S.D.N.Y.

4832-3894-2894v.9 3940173-000113

Sept. 13, 2019) (plaintiff's "fail[ure] to state a claim for copyright infringement because he cannot establish substantial similarity between the protectible elements of the character in the [the two works]" barred him from stating a claim that defendants "falsely imply[ed] that [plaintiff] *or* his character endorsed" defendants in violation of Section 43(a) of the Lanham Act); *see also Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1244 (9th Cir. 2013) ("if [plaintiff's] likeness does not in fact appear in the games—[plaintiff] has no claim at all under the Lanham Act.").[13]  Plaintiffs' proposed Lanham Act claim fails for this reason alone.

If the failure to actually identify Shull in *Billions* were not enough – and it is – Plaintiffs' Lanham Act claim independently fails because it is barred by the First Amendment.[14]  Thirty years ago, the Second Circuit recognized in *Rogers v. Grimaldi* that "[b]ecause overextension of Lanham Act restrictions . . . might intrude on First Amendment values, we must construe the Act narrowly to avoid such a conflict."  875 F.2d 994, 998 (2d Cir. 1989).  In *Rogers*, the famous actress Ginger Rogers brought a Lanham Act claim against a film entitled "Ginger and Fred" about the reunion of two fictional Italian cabaret performers who early in their lives imitated Ginger and Fred, claiming the title created a likelihood of confusion that the film was about her or that she "produced, endorsed, sponsored, or approved the film."  *Id.* at 1000-01.  The Second Circuit found the First Amendment barred the application of the Lanham Act to the film's

---

[13] Plaintiffs' reliance on an alleged "initial" meeting, emails, and phone call between Shull and certain Defendants as evidence of the use of her persona is undermined by their own pleadings.  At the time of this alleged "initial" meeting the character of Wendy had already been created and cast and Defendants had already met with another performance coach, Tony Robbins.  Compl. ¶¶ 31-32.

[14] A fictionalized drama such as *Billions* enjoys First Amendment protections.  *See Zacchini v. Scripps–Howard Broadcasting Co.,* 433 U.S. 562, 578 (1977) ("There is no doubt that entertainment, as well as news, enjoys First Amendment protection."); *Kaplan v. California,* 413 U.S. 115, 119–120(1973)("[P]ictures, films, paintings, drawings, and engravings ... have First Amendment protection[.]").  The fact that Defendants are in the business of content creation or are for-profit entities does not diminish the application of the First Amendment.  *See Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 385 (1973) ("If a newspaper's profit motive were determinative, all aspects of its operations—from the selection of news stories to the choice of editorial position—would be subject to regulation if it could be established that they were conducted with a view toward increased sales. Such a basis for regulation clearly would be incompatible with the First Amendment.").

21

"minimally relevant use of a celebrity's name in the title . . . where the title d[id] not *explicitly* denote authorship, sponsorship, or endorsement by the celebrity or explicitly mislead as to content." *Id.* at 1005 (emphasis added).

Since *Rogers*, courts within the Second Circuit have recognized that the "Lanham Act is inapplicable to 'artistic works' as long as the defendant's use [of] a [plaintiff's] [trade]mark is (1) 'artistically relevant' to the work and (2) not 'explicitly misleading' as to the source of the work." *See Louis Vuitton Malletier S.A. v. Warner Bros. Entertainment Inc.*, 868 F. Supp. 2d 172, 177 (S.D.N.Y. 2012) (citing *Rogers*, 875 F.2d at 999, and *Twin Peaks Prods, Inc. v. Publ'ns Int'l Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993)).  These requirements are met here.

*First,* even if one assumes for sake of analysis that Shull's "persona" as a female hedge fund performance coach counseling clients about their emotions was used – and this Court already found that her likeness was *not* used – there can be no dispute that any such use was artistically relevant to *Billions*. "The threshold for 'artistic relevance' is purposely low and will be satisfied unless the use 'has *no* artistic relevance to the underlying work *whatsoever.*'" *Louis Vuitton*, 868 F. Supp. 2d at 178 (quoting *Rogers*, 875 F.2d at 999) (emphasis in original); *see also E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008) ("[T]he level of relevance merely must be above zero.").  Here, including a performance coach counseling traders on how to make better trades is relevant to *Billions*, a "complex drama about power politics in the world of New York high finance" that features a self-made billionaire hedge fund founder who uses any means necessary to successfully beat the market, including his own in-house performance coach.  *See* MTD at 3-4.  This level of relevance more than surpasses the "minimum threshold" of the more than zero relevance that is needed.  *See Rogers*, 875 F.2d at 1001 (finding the title "Ginger and Fred" was artistically relevant to the film where "the

central characters in the film are nicknamed Ginger and Fred, and these names are not arbitrarily chosen just to exploit the publicity value of their real life counterparts but instead have genuine relevance to the film's story").

*Second,* neither *Billions* nor Wendy's character "explicitly mislead" viewers as to the source of the character. "[T]he finding of likelihood of confusion must be particularly compelling to outweigh the First Amendment interest recognized in *Rogers.*" *Twin Peaks,* 996 F.2d at 1379. Unlike *Rogers,* where the title and premise of the film used Ms. Rogers' name and played off her famous relationship with Fred Astaire, Defendants do *not* use Shull's name, voice, or physical likeness in *Billions* and the title, *Billions,* does not relate in any way to Shull. This is far removed from the facts of *Rogers*—facts which *still* failed to state a claim. There is simply no basis, consistent with the First Amendment, to conclude that *Billions* "expressly misleads" viewers to believe that Shull endorsed the show.[15]

This conclusion is not changed by Plaintiffs' proposed allegations that third parties were confused about Shull's involvement with *Billions. See* Br. 12; AC ¶ 72.[16] The *Rogers* test "teaches that mark owners must accept 'some' confusion when outweighed by free speech interests." *See also Louis Vuitton,* 868 F. Supp. 2d at 181, 184 n. 19 ("Even if the court assumes, arguendo, that Louis Vuitton has stated a cognizable claim of confusion, its claim would fail

---

[15] This conclusion is reinforced by the Court's finding that performance coaches on Wall Street have become common. Dec. at *11, *13.

[16] It is with some irony that Shull attempts to rely on people erroneously indicating that the Wendy character is inspired by her. As any cursory internet search reveals, it is Shull, not Defendants, who has created this false impression. Shull repeatedly and consistently associates herself with *Billions* and Wendy, including it in her Twitter identification, her online bio and other publications. She should not be able to bootstrap a false association *she* alone created as support for her claim. *See, e.g.,* https://therethinkgroup.net/about-us/ (linking to "[o]ne of the latest [press features] is this overview from *Forbes* [entitled] 'Meet Denise Shull, The Real Life Performance Coach from BILLIONS'"); https://therethinkgroup.net/about-us/our-people/denise-shull/ (touting her association with *Billions*); https://twitter.com/DeniseKShull/status/1199291293681225728 (responding to a tweet that she would characterize herself as the acclaimed performance coach "which the character Wendy Rhoades is based on"); https://twitter.com/DeniseKShull/status/1062740528343736321 ("Super grateful 2 have opportunity 2 take my #WendyRhoades @SHO_Billions coaching work into broader challenges").

anyway" under the First Amendment).  In fact, in *Rogers* the plaintiff submitted a market research survey and anecdotal evidence indicating that potential movie viewers were misled by the title "Ginger and Fred" to believe that Rogers was involved with the film.  *Rogers*, 875 F.2d at 997.  Notwithstanding the evidence of viewer confusion, the Second Circuit held that any risk of misunderstanding "is so outweighed by the interests in artistic expression as to preclude application of the Lanham Act."  *Rogers*, 875 F.2d at 997; *see also ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 937 (6th Cir. 2003) ("even where "plaintiff's survey evidence . . . indicates . . . that some members of the public would draw the incorrect inference that [Tiger] Woods had some connection with Rush's print" "the risk of misunderstanding" "is so outweighed by the interest in artistic expression" that the First Amendment bars the application of the Lanham Act to the print).  Thus, Plaintiffs cannot overcome the First Amendment standard articulated in *Rogers* simply because some third parties allegedly drew some connection between Shull and the Wendy character since they were both female performance coaches.

Plaintiffs ignore the critical distinction between expressive and commercial works in evaluating the reach of the Lanham Act.  Indeed, the cases relied on by Plaintiffs as support for their Lanham Act claim addresses the application of the Lanham Act to commercial uses – not expressive works like *Billions.  See Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 456 (S.D.N.Y. 2008) (a blue cartoon M & M appeared in a commercial setting dressed like plaintiff's street performance character known as "The Naked Cowboy"); *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1396 (9th Cir. 1992), *as amended* (Aug. 19, 1992) (Samsung advertisement depicting a robot, dressed in a wig, gown, and jewelry selected to resemble Vanna White); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc*., 778 F.3d 1059, 1068 (9th Cir. 2015) (use of Bob Marley's

image on merchandise).[17]  These cases are simply not relevant here where the Court is faced with a highly creative expressive work like *Billions* that is fully protected by the First Amendment.

Under *Rogers* and its progeny, Plaintiffs cannot and do not state a Lanham Act claim. Accordingly, this claim is futile as well and the motion should be denied.

## III.  PLAINTIFFS' MISAPPROPRIATION CLAIM WAS ALREADY DISMISSED

Plaintiffs seek remand of their state law misappropriation claim based on the incorrect premise that this Court "declined to exercise jurisdiction to determine it."  Br. at 2, 14.  Again, it appears Plaintiffs simply did not review the Decision thoroughly.  In fact, the Court explicitly determined that Plaintiffs' state law claim for misappropriation failed as a matter of law "for the same reasons" as Plaintiffs' accounting claim, namely "because Plaintiffs fail to establish that Shull and Defendants were in a fiduciary relationship."  *See* Dec. at *14 n.6 (citing *Stewart v. World Wrestling Fed'n Entm't, Inc.*, No. 03 CV 2468 RLC, 2005 WL 66890, at *5 (S.D.N.Y. Jan. 11, 2005) ("To properly allege a claim for misappropriation, plaintiff must show: (1) the existence of a confidential or fiduciary relationship between the parties; and (2) that the idea is novel and concrete.")); *see also* Tr. 73:14 (Plaintiffs' counsel stating that Plaintiffs "are asserting a New York state misappropriation claim based on the idea of a confidential relationship").  Because this Court already ruled on, and indeed, dismissed Plaintiffs' misappropriation claim, Plaintiffs' request to remand should be denied.

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' post-judgment motion in its entirety.

---

[17] The court in *Fifty-Six Hope Rd. Music*, 778 F.3d at 1068 n.1 also found that the defendants in that case had waived any First Amendment defense under *Rogers*.

4832-3894-2894v.9 3940173-000113

Dated: December 13, 2019
      New York, New York

                    Respectfully submitted,

                    DAVIS WRIGHT TREMAINE LLP

                    By:  */s/ Elizabeth A. McNamara*
                    Elizabeth A. McNamara
                    Rachel F. Strom
                    Jamie S. Raghu
                    1251 Avenue of the Americas, 21st Floor
                    New York, New York 10020
                    Phone (212) 489-8230
                    Fax (212) 489-8340
                    Email:   lizmcnamara@dwt.com
                                rachelstrom@dwt.com
                                jamieraghu@dwt.com

                    *Attorneys for Defendants Andrew Ross Sorkin,*
                    *Brian Koppelman, David Levien, David Nevins,*
                    *TBTF Productions Inc., Showtime Networks Inc.,*
                    *and CBS Corporation*

4832-3894-2894v.9 3940173-000113