UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DENISE K. SHULL and THE RETHINK GROUP, INC.,<br><br>      Plaintiffs,<br><br>    v.<br><br>ANDREW ROSS SORKIN, BRIAN KOPPELMAN, DAVID LEVIEN, DAVID NEVINS, TBTF PRODUCTIONS INC., SHOWTIME NETWORKS INC., and CBS CORPORATION,<br><br>      Defendants. | Civ. No. 18-cv-12400 (GPD) |

**PLAINTIFFS' MEMORANDUM OF LAW IN REPLY**

Borstein Turkel PC
*Attorneys for Plaintiffs Denise K. Shull & The ReThink Group, Inc.*
420 Lexington Avenue
Suite 2920
New York, New York 10019
Tel. (212) 687-1600

## TABLE OF AUTHORITIES

**Cases**                                                                                                                        **Page**

*A.V. by Versace, Inc. v. Gianni Versace S.p.A.*,
    87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000)....................................................................................4

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC,*
    131 F.Supp.3d 196 (SDNY 2015)...............................................................................................8

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC,*
    364 F.Supp.3d 291 (2d Cir 2019) ..............................................................................................9

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*,
    626 F.3d 699, 725 (2d Cir. 2010)...............................................................................................4

*Agerbrink v. Model Serv. LLC*,
    155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016)................................................................................4

*Allen v. National Video, Inc.,*
    610 F.Supp. 612, 627–28 (S.D.N.Y.1985)..................................................................................8

*Block v. First Blood Assocs.*,
    988 F.2d 344, 350 (2d Cir. 1993)...............................................................................................4

*Boisson v. Banian, Ltd*,
    273 F.3d 262, 272 (2d Cir. 2001)...............................................................................................5

*Cruz v. TD Bank, N.A.*,
    742 F.3d 520, 523 (2d Cir. 2013)...............................................................................................3

*Dynamic Worldwide Logistics, Inc. v. Exclusive Expressions, LLC*
    2015 WL 5439217, at *7 (S.D.N.Y. Sept. 14, 2015)..................................................................3

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
    778 F.3d 1059, 1072 (9th Cir. 2015) .......................................................................................10

*Folio Impressions Inc. v. Byer California*,
    937 F.2d 759, 766 (2d Cir. 1991)...............................................................................................5

*Franklin v. X Gear 101, LLC*,
    2018 WL 3528731 *12 (S.D.N.Y July 23, 2018) ......................................................................8

| Cases | Page |
|---|---|

*Hamil America, Inc. v. GFI*,
   193 F.3d 92, 97 (2d Cir. 1999)..................................................................................................5

*Hypnotic Hats, Ltd. v. Wintermantel Enterprises, LLC*,
   335 F.Supp.3d 566, at 589 (S.D.N.Y. 2018)............................................................................8

*Int'l Info. Sys. Security Certification Consortium, Inc. v. Security University, LLC*,
   823 F.3d 153, at 165, 168 (2d Cir. 2016).................................................................................7

*Louis Vuitton Malletier v Warner Bros*
   868 F.Supp. at 175 n.1 .............................................................................................................6

*Oliveira v. Frito-Lay, Inc.*,
   251 F.3d 56 (2d Cir 2001)........................................................................................................8

*Oneida Indian Nation of New York State v. County of Oneida*,
   199 F.R.D. 61, 77 (N.D.N.Y.2000)..........................................................................................4

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
   681 F.3d 114, 119 (2d Cir. 2012).........................................................................................4, 5

*Park v. FDM Group, Inc.*,
   2018 WL 4100524, at *3 (S.D.N.Y. Aug. 28, 2018) ...............................................................3

*Pasternack v. Shrader*,
   863 F.3d 162, 174 (2d Cir. 2017).............................................................................................4

*Polaroid Corp. v. Polaroid Electronics Corp.*,
   287 F.2d 492, 495 (2d Cir. 1961) ), *cert. denied,* 368 U.S. 820 (1961)....................................6

*Porat v. Lincoln Towers Cmty. Ass'n*,
   464 F.3d 274, 276 (2d Cir. 2006).............................................................................................3

*Rogers v. Grimaldi*,
   875 F.2d 994, 998 (2d Cir.1989)..............................................................................................6

*Savin Corp. v. Savin Group*,
   391 F.3d 439 (2d Cir 2004)......................................................................................................8

*Starr v. Sony BMG Music Entm't*,
   592 F.3d 314, 323 n.3 (2d Cir. 2010).......................................................................................4

| Cases | Page |
|---|---|

*Twin Peaks Productions, Inc. v. Publications Intern., Ltd.*,
    996 F.2d 1366, 1379 (1993)..................................................................................................6

*Waits v. Frito–Lay, Inc.*
    978 F.2d 1093, 1107 (9th Cir.1992) .....................................................................................8

*Weight Watchers International, Inc. v. Noom, Inc.*,
    403 F.Supp.3d 361, at 378 (SDNY 2019).............................................................................7

*White v. Samsung Elecs. Am., Inc.*
    971 F.2d 1395, 1400–01 (9th Cir.1992) ...............................................................................8

*Williams v. Citigroup Inc.*,
    659 F.3d 208, 213 (2d Cir. 2011)..........................................................................................3


| Statutes & Rules | Page |
|---|---|

Fed. R. Civ. P. 15(a) ...............................................................................................................2, 3

Fed. R. Civ. P. 59......................................................................................................................2, 3

Fed. R. Civ. P. 60......................................................................................................................2, 3


| Other Authorities | Page |
|---|---|

5 *McCarthy on Trademarks and Unfair Competition,*
    § 28:15 (5th ed.)..................................................................................................................10

Plaintiffs Denise K. Shull and The ReThink Group, Inc. (together, "Plaintiffs"), by and through their undersigned attorneys, respectfully submit this memorandum of law in Reply to the Opposition of defendants Andrew Ross Sorkin ("Sorkin"), Brian Koppelman ("Koppelman"), David Levien ("Levien"), David Nevins ("Nevins"), TBTF Productions Inc. ("TBTF"), Showtime Networks Inc., ("Showtime"), and CBS Corporation ("CBS" and together with Sorkin, Koppelman, Levien, Nevins, TBTF, and Showtime, the "Defendants"), to Plaintiffs' motion (i) to vacate the judgment entered on October 9, 2019, and the Memorandum Decision and Order, entered on October 7, 2019, (ii) granting Plaintiffs leave to file the Proposed First Amended Complaint (annexed to the Motion as Exhibit A) and (iii) to remand the eighth cause of action in the original Complaint (ECF Doc. No.1), for misappropriation under state law, to state court.[1]

**PRELIMINARY STATEMENT**

Fundamentally, Plaintiffs request that the Court give due examination to the additional substantial similarities pled in the FAC and accept as true Plaintiffs' allegations of ordinary observers in the marketplace perceiving distinct and actionable similarities that the Court may not have considered or not had opportunity to consider on the prior motion. By contrast, Defendants continue to focus principally on deficiencies in the original pleading, which obscures the point of this motion.

---

[1] The Court is respectfully referred to Plaintiffs' moving papers (ECF Doc. No's 77, 77-1, 77-2, 78), referred to as "Motion", to the arguments of fact and law therein, to the terms defined therein and to the Exhibits attached thereto which are referred to herein as "Ex. ". The Complaint is referred to herein as "Complaint" and the proposed First Amended Complaint is referred to as the "FAC."

1

As alleged, and as is true, Ms. Shull and her fictionalized character are widely known for their unique ability to immediately interpret – and in specific ways identified at least in part in the FAC – the mysterious Rorschach blot of risk perception with femininity, grace and aplomb; unraveling complex unconscious mental contexts that are driving otherwise inexplicable money-losing behaviors among a male-dominated hedge fund world.

Ms. Shull's distinctive persona is applied by Defendants to their *Billions* character of Wendy to imbue believability and authenticity, so that the scripted drama retains sufficient realism and gravitas *in spite* of its more sexually charged and outlandish secondary storylines and backstories. Defendants know that the close comparisons to Ms. Shull enriched the show so they did not genuinely attempt to contest public expressions of similarities. The close comparison to reality is exactly what they wanted. Plaintiffs pray the Court credit this supervenience of persona as alleged and grant leave to file the proposed FAC, thus permitting this action to continue.

## ARGUMENT

There can be no dispute that Plaintiffs requested leave to amend at oral argument; the Court did not address the request in granting dismissal; no previous amendment has been requested or made, and the request was filed promptly. See e.g. Tr. 62.14; ECF Doc No 77. Plaintiffs had to bring this motion pursuant to Rule 59(e) or 60(b) because the Court entered final judgment dismissing the Complaint.  Therefore, Plaintiffs cannot amend under Rule 15(a) unless the judgment is modified, either by this Court pursuant to Rule 59(e) or 60(b) or on appeal. Fed. R. Civ. P. 15(a), 59(e), 60 (b).

2

The liberal standard for amending pleadings under Rule 15 still applies notwithstanding that Rules 59 and 60 also require extraordinary circumstances, and the Court should reopen judgment and grant Plaintiffs their leave to file the FAC since District Court contemporaneously entered judgment and dismissed the Complaint without allowing an opportunity to amend, and since Plaintiffs did not delay in seeking amendment. Fed. R. Civ. P. 15(a), 59, 60; See *Park v. FDM Group, Inc.*, 2018 WL 4100524, at *3 (S.D.N.Y. Aug. 28, 2018) (granting Rule 59 relief under the Rule 15 standard because the Court entered judgment before the plaintiff had an opportunity to move to cure deficiencies in the complaint); *Dynamic Worldwide Logistics, Inc. v. Exclusive Expressions, LLC*, 2015 WL 5439217, at *7 (S.D.N.Y. Sept. 14, 2015) ("Although Plaintiff's papers do not meet the 'heavy burden' of Rule 59(e), the Court will, in its discretion, consider Plaintiff's request to amend its pleadings" under the permissive standard of Rule 15….. "Plaintiff's motion to amend … so as to dismiss the case without prejudice is granted."); *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011) (finding that a district court abused its discretion in denying the plaintiff's motion to reopen the judgment and amend the pleadings when plaintiff's only opportunities to amend occurred before the court had made a determination on the motion to dismiss and in the short window between the decision and the entry of the order).   Making a clean break, Plaintiffs have also substituted new counsel.

Pursuant to Rule 15, leave to amend the complaint should be "freely give[n] ... when justice so requires," Fed. R. Civ. P. 15(a)(2), and "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead."  *Cruz v. TD Bank, N.A.*, 742 F.3d 520, 523 (2d Cir. 2013); see also *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) ("Without doubt, this circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)."). The general rule in the Second Circuit is "to

allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (quoting *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010)).

Defendants demonstrate neither that "'substantial prejudice would result were the proposed amendment to be granted,'" [*Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016) (quoting *Oneida Indian Nation of New York State v. County of Oneida*, 199 F.R.D. 61, 77 (N.D.N.Y.2000))], nor that amendment would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the [nonmovant] from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). And "[T]he time, effort and money . . . expended in litigating the matter,' without more, [does not] constitute prejudice sufficient to warrant denial of leave to amend. *Pasternack*, 863 F.3d at 174. Indeed, "denial of leave to amend, based solely on delay and litigation expense, [is] an abuse of discretion." *Id;* See *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (finding no undue prejudice where "[n]o trial date has yet been set, nor has discovery been completed"). Defendants are in no way prejudiced.

As argued further here, Defendants do not establish that "as a matter of law, the proposed FAC would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure" such that the court could also deny leave to amend where amendment would be futile. *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). In assessing whether Plaintiffs' proposed FAC states a claim, the court must consider "the proposed amendment[s] . . . along with the remainder of the complaint." *Starr v. Sony BMG Music Ent't*, 592 F.3d 314, 323 n.3 (2d Cir. 2010). The court must "accept as true all non-

conclusory factual allegations therein and draw all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief." *Panther Partners*, 681 F.3d at 119.

Moreover, Defendants avoid that substantial similarity for copyright infringement must be analyzed on its own merits, as even the Second Circuit reviews de novo district court decisions on substantial similarity. See, e.g., *Boisson v. Banian, Ltd*, 273 F.3d 262, 272 (2d Cir. 2001); *Hamil America, Inc. v. GFI*, 193 F.3d 92, 97 (2d Cir. 1999); *Folio Impressions Inc. v. Byer California*, 937 F.2d 759, 766 (2d Cir. 1991) ("In considering substantial similarity between two items, we review the district court's findings de novo – not on the clearly erroneous standard – because what is required is only a visual comparison of the works, rather than credibility, which we are in as good a position to decide as was the district court").

As argued substantially on Motion, the FAC provides numerous additional allegations of substantial similarity that were not before the Court on the prior Complaint. Importantly, the FAC alleges specific ordinary consumers of both Plaintiffs' and Defendants' work, who in the real world, in real time, publicly and privately stated their perception that the Wendy character either is Ms. Shull or is modelled on her. Ex. B ¶¶72(i)-(xx)-73. These attributed and often public comments raise substantial issues of fact that are not properly decided on a Rule 12 motion, and warrant revisiting the Court's prior analysis to permit further discovery on copyright infringement and likelihood of confusion. *Id.* As pled in detail in the FAC, the facts sufficiently show that Defendants have explicitly misled consumers, thus substantiating their Lanham Act claim, and indeed numerous ordinary observers actually recognize the substantial similarities between the parties' works, as relevant to the copyright claim. *Id.*

Defendants qualified First Amendment defense under the Lanham Act is no cover when Defendants *continue* to insist that the Wendy character is not based on and owes nothing to Ms. Shull. There is no First Amendment protection for speech concerning a topic about which the party insists it is not speaking, and Defendants certainly have identified no case where such a defense was allowed despite the defendant's contention it was not even availing itself of any First Amendment right. Defendants cannot have it both ways. In *Louis Vuitton Malletier v. Warner Bros*, for instance, there was no question that the travel bag was a copy of the Louis Vuitton original. 868 F.Supp. at 175 n.1. In *Twin Peaks Productions, Inc. v. Publications Intern., Ltd.*, 996 F.2d 1366, 1379 (1993), the defendant's book was self-avowedly about the TV show. In *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir.1989), the subject film "tells the story of two fictional Italian cabaret performers, Pippo and Amelia, who, in their heyday, imitated [Ginger] Rogers and [Fred] Astaire and became known in Italy as 'Ginger and Fred.'" *Id* at 996-997. The First Amendment only protects those who are honest about their art.

Moreover, the Defendants' qualified First Amendment defense pursuant to *Rogers v. Grimaldi*, fails where the complaint is dismissed without analysis of the multifactor *Polaroid* test. *Twin Peaks Productions, Inc. v. Publications Intern., Ltd.*, 996 F.2d 1366, 1379 (1993); see *Polaroid Corp. v. Polaroid Electronics Corp.,* 287 F.2d 492, 495 (2d Cir. 1961), *cert. denied,* 368 U.S. 820 (1961). (eight factors: (1) strength of senior mark; (2) similarity of marks; (3) proximity of the products and their competitiveness with one another; (4) likelihood that the senior user may bridge the gap; (5) actual consumer confusion; (6) defendant's bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market. "Even this extensive catalogue does not exhaust the possibilities—the court may have to take still other variables into account."). "In applying this test, the Second Circuit has observed "that

6

many of the Polaroid factors are a bad fit" for a nominative fair use analysis because they are directed toward confusion over the source of products, as opposed to sponsorship or endorsement. *Weight Watchers International, Inc. v. Noom, Inc.*, 403 F.Supp.3d 361, at 378 (SDNY 2019) citing to *Int'l Info. Sys. Security Certification Consortium, Inc. v. Security University, LLC*, 823 F.3d 153, at 165, 168 (2d Cir. 2016). "It stated that while there was 'no reason to replace the Polaroid test' where a defendant raises nominative fair use, Second Circuit precedent has 'repeatedly emphasized that the *Polaroid* factors are non-exclusive.'" *Id*. at 168.

Although Plaintiff faces a compellingly higher burden "to outweigh the First Amendment interest recognized in Rogers," (*Twin Peaks* at 1379), and while the attributes of the Wendy character may be "of some artistic relevance" to the Defendants, the Court still must address the further question of whether the work induces the public to believe that Plaintiff prepared or otherwise authorized it. *Id* at 1379 ("whether the title is misleading in the sense that it induces members of the public to believe the Book was prepared or otherwise authorized by TPP."). Yet, Defendants' never even address the *Polaroid* factors, and the Court's prior decision likewise never considered this claim, which had not been presented.

Specifically, the FAC sufficiently alleges that Ms. Shull and her work are well known and particularly so in her industry (e.g. Ex . B ¶¶25, 40, 45, 72), that the Wendy character and the interactions between performance coach and portfolio manager are substantially similar to those aspects of Ms. Shull known in her industry (e.g. *Id*. ¶¶59-63, 65-71); that the character of Wendy is believed by the general public to be, or be by Ms. Shull (e.g. *Id*. ¶¶72-73); that there is extensive actual confusion by consumers of Ms. Shull and of *Billions* (e.g. *Id*. ¶¶98-99)*,* and that Defendants used Ms. Shull, her persona and work in bad faith. (e.g. *Id*. ¶¶46, 48, 52-53, 87).

7

The unusually pervasive and persistent pleadings of evidence of actual confusion alone should preclude dismissal, particularly at the pleadings stage. See *Hypnotic Hats, Ltd. v. Wintermantel Enterprises, LLC*, 335 F.Supp.3d 566, at 589 (S.D.N.Y. 2018) citing *Savin Corp. v. Savin Group*, 391 F.3d 4839 (2d Cir 2004) (Even at summary judgment stage, "'[I]t is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only likelihood of confusion as to source.'" *Savin*, 391 F.3d at 459 (citation and internal quotation marks omitted). Nevertheless, "'[t]here can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion.'" *Id*. [citation and internal quotation marks omitted]– finding no actual confusion only because there was de minimis evidence of actual confusion]); see *Franklin v. X Gear 101, LLC*, 2018 WL 3528731 *12 (S.D.N.Y July 23, 2018)  (Polaroid analysis, denying dismissal of  Lanham Act trademark claim where, *inter alia*, "plaintiff has sufficiently shown 'actual confusion' at the motion to dismiss stage.")

Further still, Ms. Shull is entitled to protect against Defendants use of her persona by her claim of false endorsement in the FAC. See *Oliveira v. Frito-Lay, Inc.*, 251 F.3d 56 (2d Cir 2001) ("…courts have protected the "persona" of an artist against false implication of endorsement generally resulting from the use of look-alikes or sound-alikes. See, e.g., *Waits v. Frito–Lay, Inc.,* 978 F.2d 1093, 1107 (9th Cir.1992) (affirming judgment for plaintiff, Tom Waits, on false implied endorsement claim for use in a snack-food commercial of a singer who imitated plaintiff's gravelly singing style praising defendant's product." [citing to *White v. Samsung Elecs. Am., Inc.,* 971 F.2d 1395, 1400–01 (9th Cir.1992) ("look-alike caricature robot endorsing defendant's product") and to *Allen v. National Video, Inc.,* 610 F.Supp. 612, 627–28 (S.D.N.Y.1985) ("look-alike renting videos from defendant"); *A.V.E.L.A., Inc. v. Estate of*

8

*Marilyn Monroe, LLC,* 131 F.Supp.3d 196 (SDNY 2015) (Celebrity may assert a claim for false endorsement under Lanham Act "where a party uses the celebrity's 'persona without permission to suggest false endorsement or association.' (citations omitted). To state a claim for false endorsement, the plaintiff must allege that the defendant " '[i] made a false or misleading representation of fact; [ii] in commerce; [iii] in connection with goods or services; [iv] that is likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services.'" (citations omitted); see also *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 364 F.Supp.3d 291 (2d Cir 2019).

      The Court picked up on this issue of using Ms. Shull's persona without her consent at oral argument where prior counsel admitted "inartful pleading." TR. 68.13-72.16).  The FAC relies on substantially similar allegations of fact to replace Plaintiffs' prior claim for violation of New York Civil Rights Law Sections 50 and 51 (protecting the right of privacy) (see Ex. B. ¶98) and, Plaintiffs' moving papers recite the many similarities that Plaintiff pleads in the Complaint and FAC that are basis for the Court to amend its prior decision to allow Ms. Shull to protect her unique persona. Doc. 78 pp.11-13, Ex. B. In those cases, as here, what is unique about the discerned look-a-likes and sound-a-likes largely by what is known to the observer, the consumer. In this matter, by the claims stated in the FAC, the Court should find that Plaintiffs have sufficiently stated claim for false endorsement upon Defendants' use of Ms. Shull's persona by their act-a-like character of Wendy.

      Defendants contend that *Billions* is not a product, but that is exactly what a television show sold on cable television and on pay-per-play streaming and on demand services is.  And in any event, false endorsement claims are not limited to the "use of the plaintiff's identity in advertising to sell goods or services, but also include unpermitted use of plaintiff's identity on a

9

product itself." 5 *McCarthy on Trademarks and Unfair Competition* § 28:15 (5th ed.); See e.g. *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1072 (9th Cir. 2015) ("[T]he plain text of the statute establishes that a viable false endorsement claim does not require that the mark be used *in connection* with separate goods to promote the purchase of those separate goods—but may be used directly *on* the defendant's goods.").

Thus, Plaintiffs' FAC sets forth sufficient allegations of fact to support a claim for false endorsement, demonstrating that the amendment would not be futile.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be granted in all respects.

Dated: New York, New York
January 17, 2020

BORSTEIN TURKEL PC
*Attorneys for Plaintiffs Denise Shull and The ReThink Group, LLC*

By: _____
Avram Turkel
420 Lexington Avenue
Suite 2920
New York, NY 10170
(212) 687-1600
aturkel@btpclaw.com